UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 OCT 31  P 3: 25

US DISTRICT COURT
BRIDGEPORT CT

| | | |
|---|---|---|
| ROBERT KALMAN, | : | PRISONER |
| Plaintiff, | | |
| V. | : | Civil Action No. 3: 03cv 671 (DJS) (TPS) |
| ROBERT BERGER, et al., | : | |
| Defendants, | | October 29, 2003 |

## DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT

ROBERT KALMAN declares under penalty of perjury:

1. I am the pro se, plaintiff in the above captioned civil action. The complaint alleges that I was ordered confined to the most restrictive setting in a maximum-security facility by the defendants Robert Berger, John Ryan, Janet Williams, Sylvia Cancela and Susan Blair after a finding by defendants that I am "so violent" that I need custody, care and treatment in accordance with Connecticut General Statute Section 17a-599.

2. Following a trial before a jury of six, on October 30, 2001, the jury found that I was not criminally responsible by reason of mental disease or defect. Following the jury's verdict, the Honorable Lubbie Harper, Jr, committed me to the custody of the Commissioner of the DMHAS, and on 10/30/2001, I was admitted to the Whiting Forensic Institute for a

1

diagnostic evaluation to determine if I suffer from a psychiatric disability that would render me an imminent danger to my self or to others.

3. The diagnostic team had established that my mental condition reflects a primary diagnoses of substance dependence on Axis: I. Adult Antisocial Personality Disorder under Axis: II.

4. The diagnostic team applied the International Classification of Diseases Ninth Revision, Clinical Modification (ICDM-9-CM), "V 71.01" to my Axis: II, condition. See attached Exhibit # 1, (The Whiting Forensic Institutes report pursuant to Conn. Gen. Stat. Sec., 17a-582, p., # 13 diagnoses.)

5. During my stay at Whiting I was non-violent, cooperative and participated in activities. I have reached an impasse with the Unit psychiatrist Dr. Carre due to his refusal to allow me access to my clinical records. I have also wanted a clarification of my condition as to the finding and conclusion of the diagnostic teams' report. Dr. Carre was not open to any discussion. He also refused to allow me to contribute to my treatment plan and he also refused my request to have an Advocate present in treatment meetings. I submitted grievances addressing the lack of services provided to me.

6. On January 10, 2003, Dr. Carre testified before the Connecticut Psychiatric Security Review Board and his testimony revealed that I can be placed in a least restrictive setting. Dr. Carre also stated that the diagnostic team did not discover any significant mental disorder. (See Exhibit A).

7. Dr. Sabita Rathi my psychiatrist at the time of the hearing stated that my mental condition is intact and I was not a management problem. Dr. Rathi concurred in diagnosis with Dr. Carre and with the Whiting Forensic Diagnostic Team's finding.

8. Defendant Robert Berger quoted a report of Dr. Peter Zeman on the record. Dr. Zeman's report also provided that I can be productively placed in a less restrictive setting. (See Exhibit B, report from Dr. Zeman M.D. dated July 18th, 2002).

9. At the hearing on January 10, 2003, there was no testimony provided that I suffer from a psychiatric disability to the extent that I would constitute a danger to others or myself. The finding of the treatment professionals and all the clinical evidence supporting those findings, at most, demonstrates a possibility that I might decompensate into dissociative condition, upon the disinhibiting effects of alcohol and cocaine, should I resume their use,

and while in such a state, might possibly present a risk of danger to harm myself or others.

10. None of the testimony provided at the Hearing on January 10, 2003 stated that I am violent that I need to be confined under the most restrictive setting under maximum-security conditions in accordance with Connecticut General Statute Section 17a-599. In fact I was never violent toward any individual in this facility even when I was faced with the probability to be attacked by another resident.

11. On February 21st, 2003, the defendants issued a Memorandum of Decision, ordering me confined to the maximum-security setting of Whiting Forensic Institute. The Memorandum of Decision issued on February 21, 2003 states that Robert Kalman "is so violent that he requires confinement within a maximum-security setting." (See attached Exhibit 2 Memorandum of Decision.)

12. I am confined in a maximum-security facility, under the most restrictive conditions, this deprives me of services in the least restrictive setting. I am denied rights, privileges, opportunities and advantages enjoyed by others in the most integrated setting. My confinement in the present setting deprives me the right to liberty to be free from undue restraint, in

violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

13. For the reasons stated in the brief submitted with this motion, these undisputed facts establish that the defendants Robert Berger, John Ryan Janet Williams, Sylvia Cancela and Susan Blair, denied my right to due process of law. Accordingly, I am entitled to summary judgement on my due process claim.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

October 29, 2003

*Robert Kalman* (signature)
Robert Kalman
Whiting Forensic Institute
70 O'Brien Drive
Middletown, CT 06457
Tel: (860) 346 9408

## CERTIFICATION

I hereby certify that a copy of the forgoing <u>Declaration in Support of Plaintiff's Motion for Summary Judgement</u>, was mailed in accordance with Rule 5 (b) of the Federal Rules of Civil Procedure on this 29th, day of October 2003 to:

Richard J. Lynch
Assistant Attorney General
55 Elm Street, P. O. Box 120
Hartford, CT 06141 – 0120

                                        Robert Kalman, Pro se,

Steven C. Stack                                                     Page 13
Assistant Clerk of the Court                              Re: Kalman, Robert
GA# 23 Courthouse                                            March 15, 2002

directed toward himself or others. He denies any propensity toward violence. Mr. Kalman is oriented in time, place, and person. He shows no memory deficits for immediate (three out of three objects after five minutes), recent (what he had for lunch yesterday), and remote (his recollection of life in Romania) memories. His capacity for concentration is intact (he does serial sevens). His ability to abstract is intact. His insight is fair. His judgement is potentially impaired by drug and alcohol use.

**FORMULATION:** In light of the available information, Mr. Kalman's psychiatric difficulties appear to have stemmed from his excessive and prolonged abuse of alcohol and cocaine. His hospitalization for depression in his childhood is noteworthy, but appears to have been a single episode, probably a reaction to the physical abuse that he suffered, and it appears to have resolved through a short course of treatment.

According to current interviews, Mr. Kalman's behavior and mood changed during the mid-1990s with the onset of his alcohol abuse. According to available information, Mr. Kalman's behavior brought him to the attention of the police, beginning in 1999. He has been previously diagnosed with Bipolar Disorder and Schizoaffective Disorder, in addition to Alcohol Dependence and Cocaine Dependence. The diagnosis of PostTraumatic Stress Disorder has been raised on two previous occasions, and the diagnosis of Antisocial Personality Disorder has been made several times.

Mr. Kalman has not demonstrated evidence of a thought disorder or a mood disorder during this current period of hospitalization. Mr. Kalman's pattern of use of alcohol and cocaine demonstrated his dependence on these substances. He abused increasing amounts over time and developed a tolerance to both. He reported and was treated for withdrawal symptoms on the occasions when he stopped using. He had no previous success in controlling his substance abuse. His use of substances was a part of his daily routine, as was his other drug-related activity. Mr. Kalman's functioning was significantly impaired by his substance use. As a result, his primary diagnoses are substance-related.

No evidence of psychosis was observed during this hospitalization. Previously reported episodes of psychosis may have been the result of his alcohol and cocaine use. Therefore, the evaluation team offers the following diagnoses:

Diagnosis:

| | | |
|---|---|---|
| AXIS I: | 303.90 | Alcohol Dependence, in remission in a controlled environment |
| | 304.20 | Cocaine Dependence, in remission in a controlled environment |
| | 292.84 | Other Substance-Induced Mood Disorder (cocaine and alcohol) |
| AXIS II: | V71.01 | Adult Antisocial Personality Disorder |
| AXIS III: | V70.5 | No Diagnosis |
| AXIS IV: | | Problems related to interaction with legal system/crime |
| AXIS V: | | Current GAF 50 |

## ORDER

Pursuant to Connecticut General Statutes, Sections 17a-584, 17a-586 and 17a-599, the Psychiatric Security Review Board hereby ORDERS:

1. Robert Kalman shall remain confined at the Whiting Service of Connecticut Valley Hospital for the purposes of care, custody and treatment. This order of confinement pursuant to CGS Section 17a-584 may be appealed in accordance with the provisions of Section 17a-597 and Chapter 54 of the Connecticut General Statutes.

2. Further the Board orders that the confinement of Robert Kalman be under maximum-security conditions.

3. The Whiting Service of Connecticut Valley Hospital shall report every six months to the Psychiatric Security Review Board on the mental condition, mental status, and course of treatment of Robert Kalman, pursuant to Connecticut General Statutes, Section 17a-586. The first such report is due no later than July 31, 2003, and then every six months subsequent to the due date of the first report.

Dated: February 21, 2003

Psychiatric Security Review Board

Martha E. Lewis, Executive Director
On Behalf of the
Psychiatric Security Review Board

pc   Assistant State's Attorney Susan Filan
     Attorney Glen Conway
     Public Defender Monte P. Radler
     Marilyn R. Smith-Cotterell, LCSW
     Michael Lah, Ph.D.
     DMHAS Conditional Release Service Unit
     √Robert Kalman

# STATE OF CONNECTICUT

### PSYCHIATRIC SECURITY REVIEW BOARD

RE:   ROBERT KALMAN

Psychiatric Security Review Board
ID Number: 0291   DOB: 7/18/70
Document Number: 03-02-3275

## MEMORANDUM OF DECISION

On January 10, 2003, the Psychiatric Security Review Board held a hearing to review the commitment of Robert Kalman to its jurisdiction, pursuant to Connecticut General Statutes, Section 17a-583.

Robert Kalman was committed to the jurisdiction of the Psychiatric Security Review Board on September 25, 2002 by the New Haven Superior Court for a period of time not to exceed 35 years after he was acquitted by reason of mental disease or defect of the charges of Illegal Possession of Explosives, Failure to Appear in the First Degree and two counts of Risk of Injury.

At the hearing, the parties appearing were Assistant State's Attorney Susan Filan, representing the Chief State's Attorney's Office; Robert Kalman, the acquittee, represented by Attorney Glen Conway. The witnesses were Alexandre Carre, M.D., and Sabita Rathi, M.D., of the Whiting Service of Connecticut Valley Hospital.

Dr. Carre, the attending psychiatrist who evaluated Robert Kalman for a seven month period on Whiting's Admission Unit, testified as follows: Mr. Kalman was on the Admission Unit from October 30, 2001 until August 2, 2002. He fully participated in the evaluation process. For the most part, Mr. Kalman was polite, cooperative, maintained a quiet routine and was generally not considered a management problem. He attended all of his groups, although he often preferred solitary activity. His primary socialization activity is to maintain frequent telephone contact and visitation with family and friends. Psychological testing revealed that Mr. Kalman does not openly admit to experiencing psychological difficulties. He is troubled by negative emotions and likely to experience depression and anxiety. He has few outlets for expressing intense emotion and was not adept at handling these emotions without the use of drugs and alcohol. Mr. Kalman expects to have negative experiences with others. He is deeply distrustful of others and feels cheated and misunderstood in his interactions with others. Mr. Kalman resents authority and likes to think of himself as a rebellious individual with little regard for social convention. He believes that he has had fewer opportunities to make a good life for himself than his peers. The anger and resentful feelings that those situations generate are likely to make him behave in an impulsive manner and further hamper his ability to relate to others.

Dr. Carre further testified as follows: Initially, Mr. Kalman was on a medication regime of the antipsychotic medication Zyprexa and the mood stabilizer Depakote; these drugs were gradually discontinued. As he came off these medications, his mental status remained stable and continued to remain stable for a long period of time. In May or June 2002, a different picture of Mr. Kalman emerged. He began to engage the treatment team in one-upmanship, questioning decisions made, minimizing the validity of others made, and not respecting his own boundaries. There was an administrative decision to transfer Mr. Kalman to Unit 2, where he spent approximately two months. It is documented that he was not cooperative on that unit and was transferred to Unit 4.

Page 2 of 3

Memorandum of Decision
Re: Robert Kalman
Document #: 03-02-3275

Dr. Carre further testified as follows: While on the Admission Unit, Dr. Carre diagnosed Mr. Kalman with Alcohol Dependence, In Remission, In a Controlled Environment; Cocaine Dependence, In a Controlled Environment; Other Substance-Induced Mood Disorder (Cocaine and Alcohol); and Antisocial Personality Disorder. In assessing Mr. Kalman's risk, the most significant factor was his diagnoses of Alcohol and Cocaine Dependence in light of his inability to remain substance-free outside of a controlled environment, his inability to remain substance free under controlled circumstances, and his lack of any significant period of substance free living. In addition, Mr. Kalman shows a lack of insight into these problems, which magnifies the risk of reengaging into substance abuse and behaving in a way that would offend or break the law.

Upon cross-examination, Dr. Carre testified that he does not believe that Mr. Kalman met the criteria of a diagnosis of Post Traumatic Stress Disorder. In addition, he testified that Mr. Kalman would benefit from an intensive drug and alcohol program, but, at this point in time, he is not ready for placement in such a program outside of the hospital environment.

Sabita Rathi, M.D., Robert Kalman's current treating psychiatrist, testified as follows: Mr. Kalman was transferred to her unit on October 15, 2002. To date, he has not been a management or behavioral problem, has not been involved in any physical or verbal altercations with staff or patients and has adjusted well. He attends therapeutic and rehabilitative groups but continues to remain very focused on legal issues.

Dr. Rathi continued her testimony as follows: Upon mental status examination, Mr. Kalman was alert, oriented and cooperative. He showed no signs of psychomotor agitation, his mood was euthymic, his affect was full range, his thought processes were logical and goal directed and there was no evidence of any psychotic symptoms. Mr. Kalman complained of having difficulty falling asleep and receives a short acting sedative at night with good effect. His diagnoses remain Alcohol Dependence, In Remission, In a Controlled Environment; Cocaine Dependence, In Remission, In a Controlled Environment; Nicotine Dependence; and Antisocial Personality Disorder.

Dr. Rathi concluded her testimony as follows: She needs additional time to observe Mr. Kalman to make a determination on whether he would be a candidate for transfer to the Dutcher Service, a less restrictive program, and until that assessment can be done he needs to remain a patient at the Whiting Service.

Based on the evidence presented, the Board finds the fact that Robert Kalman is mentally ill and requires inpatient treatment and supervision and without such would be a danger to himself or others. Further, based on the need for further assessment, Mr. Kalman needs to remain in a maximum security setting as the least restrictive setting for such an assessment to safely take place.

Based on the facts, the Board finds that Robert Kalman is a person who should remain confined. He is mentally ill to the extent that his discharge or conditional release would constitute a danger to himself or others. Further, the Board finds that Robert Kalman is so violent that he requires confinement within a maximum-security setting.