**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**



FILED

| | | |
|---|---|---|
| **ROBERT KALMAN, PRO SE** | : | PRISONER |
| *Plaintiff,* | | 2003 DEC 18  P 12: 54 |
| **V.** | : | **Civil Action No. 3:03cv 1051** |
| | | **(DJS) (TPS)** |
| **ROBERT BERGER, et al.,** | : | |
| *Defendants,* | | December 12, 2003 |

### PLAINTIFF'S MOTION IN OPPOSITION AND OBJECTION
### TO DFENDANTS MOTION TO DISMISS

The plaintiff hereby objects to the defendants <u>Motion To Dismiss</u> the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the basis of abstention.   Plaintiff asserts before the Court that abstention is inappropriate because defendants' argument is unsupported and fails to mention many of the undisputed facts, and repeatedly mischaracterize the statutory framework of the Psychiatric Security Review Board.

Moreover, plaintiff asserts before the Court that abstention is inappropriate because he is not seeking to enjoin pending state proceedings,  abstention does not apply to this case,  the legal issues in the State proceedings are distinct. The reasons therefore are set forth in the plaintiff's Declaration and Memorandum of Law in Opposition to defendants Motion to Dismiss.

ROBERT KALMAN
PRO SE, PLAINTIFF
Respectfully submitted,

Robert Kalman, Pro Se
Whiting Forensic Institute
P. O. Box 70 O' Brien Dr
Middletown, CT 06457
Tel: (860) 346 9408

1

## **CERTIFICATION**

I hereby certify that a copy of the forgoing <u>Objection To Defendants Motion To Dismiss & Exhibit's</u> were mailed in accordance with Rule 5 (b) of the Federal Rules of Civil Procedure on this 12, day of December 2003 to:

Richard J. Lynch
Assistant Attorney General

Henry A. Salton
Assistant Attorney General

Kerry Anne Colson
Assistant Attorney General

55 Elm Street, P. O. Box 120
Hartford, CT 06141 – 0120

Robert Kalman, Pro se,
Whiting Forensic Institute

1

1          SUPERIOR COURT

2      JUDICIAL DISTRICT OF NEW BRITAIN

3          AT NEW BRITAIN

4    CV01-0507289 S
                              :   May 14, 2001
5    PETER HOFFMANN
                              :
6    V.
                              :
7    PSYCHIATRIC SECURITY
                              :
8    REVIEW BOARD
                              :
9    _____:

10   B E F O R E:

11          The Honorable Henry S. Cohn, Judge

12

13   A P P E A R A N C E S:

14      On behalf of the Plaintiff:

15          Assistant Public Defender

16          Connecticut Valley Hospital

17          P.O. Box 351

18          Middletown, CT 06457

19      BY:  Suzanne L. McAlpine, APD

20      On behalf of the Defendant:

21          Attorney General's Office

22          55 Elm Street

23          P.O. Box 120

24          Hartford, CT 06141-0120

25      BY:  Patrick B. Kwanashie, AAG

26                  DONNA L. PELUSO

27              COURT REPORTER/MONITOR

17

1    Department of Corrections scenario.

2        THE COURT:  All right.

3        MR. KWANASHIE:  Your Honor, I think there is a

4    very important point for me to point out here.  Prior

5    to the establishment of the PSRB being 1985, the courts

6    handled the acquittee.  The Board's functions now was

7    being performed by the Court.  And I think it was

8    agreed by all that the courts really didn't have the

9    expertise and the resources to do the job.  And that is

10   why the PSRB was created to -- you know, to uphold the

11   proposition that counsel is putting forward now, which

12   is that every decision by the Board concerning the

13   treatment, care, and costs of the (indiscernible)

14   acquittee should be reviewable by the Court, would be

15   to return us -- to return the courts back to where they

16   were before 1985, which is doing things, spending their

17   times making determinations that they -- they

18   themselves admit they weren't particularly, you know,

19   they didn't have the expertise to do and besides didn't

20   have the time to do.

21       I think that's why the judicial review was

22   restricted to those very important instances when the

23   Board is determining a person's right, you know,

24   whether to be held or to be released or to be

25   discharged, and I think we have to keep that in mind.

26       THE COURT:  All right.  The Court is going to rule

27   on this as follows:

18

1    The issue here is whether 17a-599 which says at
2    any time the Court or the Board determines that the
3    acquittee is a person who shall be confined, it shall
4    make the further determination of whether the acquittee
5    is violent and whether he should be confined to maximum
6    security or placed under such lesser restrictions.

7        There have been two cases prior to this.  Lewis --
8    Champagne v. Lewis and Zinkerman v. Connecticut.  Just
9    recently too.  In the last year or two.  That have held
10   that that section 17a-599 is not one of the ones listed
11   in 17a-597; and, therefore, since the principle of law
12   is that an administrative agency -- an appeal from an
13   administrative agency can only be sanctioned by the
14   legislature, there is no right to appeal this
15   confinement -- rather the level of confinement
16   decision.

17       The Court sees no reason to change those
18   decisions.  They are well reasoned and come to the
19   right result.  The only thing I was asking about was
20   whether the general principles of administrative law
21   apply, since the decision -- excuse me -- the statute
22   17a-597 left open and said nothing about 17a-599, as
23   opposed to some where you said you could appeal, some
24   statutes absolutely you can appeal and some statutes
25   that you can't appeal.  It's left opened.

26       Then I think we can fall back on to the general
27   question, which is:  Is this a final decision?  A final

1  decision, the only -- and that's under 4-166a -- excuse

2  me -- 166(3)(a), which says an agency determine the

3  determination in a contested case.  Then you have to

4  look to (2), the definition of a contested case, which

5  has been interpreted to mean that there has to be a

6  statutory right to a hearing.

7      I don't see anything in 17a-599, which in and of

8  itself allows for a hearing, yes, it does say that at

9  any time after the Board makes a determination on

10  confinement, then you can have the further

11  determination.  But it does not say that that hearing,

12  that there's to be a hearing as part of that further

13  determination.  In fact, the plaintiff's attorney just

14  mentioned that this request for Dutcher as opposed to

15  Whiting had come up and just happenstance became linked

16  with the 585 decision of whether or not the confinement

17  should be continued.

18      We've heard testimony that there are other

19  instances where outside of 585 and 584 there's a

20  movement of greater security needed, lesser security

21  needed, that kind of decision is committed to the

22  agency, to the Board, or to, perhaps the Court, but

23  this kind of decision is not the kind of decision which

24  was contemplated to require the hearing.  Since there's

25  no requirement of a hearing that continues the thought

26  process, which Judge McWeeny had in his Champagne and

27  Zinkerman cases that there's no jurisdiction to take an

20

1    appeal.

2        Now there's no jurisdiction even if the Board

3    said, sure, you can take an appeal.  That doesn't make

4    any difference, because if the statute doesn't allow

5    for it, or the statutory scheme doesn't allow for it,

6    then whether or not they said it is irrelevant.

7        And in addition, they may have been referring to

8    the confinement part of the -- when they said an appeal

9    could be taken, they may have been referring to the

10   confinement decision and not to the placement

11   decision.

12       Now one other point that I want to raise was the

13   whole liberty interest.  A claim is made that there

14   should be an opportunity for liberty interest this

15   Viteck case and others that talk about the right of a

16   confined person to be in the least restrictive

17   setting.  The problem there is that's it's not an

18   administrative appeal.

19       If you take a look at the case of Beizer v. The

20   Department of Labor 56 Conn. App. 347, 362, decided in

21   2000.  The Court -- the Appellate Court indicated there

22   are certain types of actions that can be taken through

23   an administrative appeal.  Where there's a

24   constitutional claim, however, a constitutional right

25   to a hearing, that is not one that can be advanced

26   through the administrative appeal, rather a declaratory

27   judgment action would have to be brought in Superior

1   Court or other steps would have to be taken to

2   challenge this kind of determination.

3       That's not within the jurisdiction of the

4   administrative appeals process, which is confined to

5   the 4-183a, which allows an appeal from a final

6   decision from of an administrative agency.  Where it's

7   an on-record appeal, we are sitting in a different

8   structure or capacity from when a declaratory judgment

9   is brought challenging a constitutional point.

10      So for those reasons, the Court determines that

11  the jurisdiction is lacking, and this case is

12  dismissed.

13      MS. McALPINE:  Your Honor, I would just like to,

14  if I may, clarify for the record, because I'm not --

15  maybe I wasn't clear to the Court, but I did not say

16  that the issue came up merely because the 17a-585

17  mandatory review was also coming up.

18      The treatment team specifically submitted an

19  application to Whiting for the transfer of Mr. Hoffman.

20  If the mandatory review came up coincidently at the

21  same time, that's different.  And as a matter of fact,

22  in the memorandum of decision, the Board said that they

23  were considering both:  The application for transfer

24  and the mandatory review.  Those are two separate

25  issues.

26      THE COURT:  Right.

27      MS. McALPINE:  And I just wanted to clarify that

22

1    for the record.

2        THE COURT:  All right.  I think this is the point

3    I was trying to raise.  Had that not coincidently come

4    up.  Let's assume that the treatment team had contacted

5    the Board alone.  The review of 585 was not scheduled

6    for another few months, but just said that your client

7    was appropriate for lesser than the Whiting treatment.

8    He was to be treated at Dutcher, and that that issue

9    was rejected by the Board itself.

10        Do you still maintain that you could appeal that

11    decision alone to this Court?  And I think I heard you

12    say that you could, and under that circumstance, the

13    Court would disagree with you and say that that is the

14    very type of thing which is excluded.  And it would be

15    one of these things that happens at any time they could

16    have opted, that is the Board could have opted to make

17    the decision on the treatment plans requests for a

18    transfer without a hearing and, therefore, the issue is

19    not one for an administrative appeal?

20        MS. McALPINE:  I'm not sure that's the case, Your

21    Honor.  I think when the hospital -- and maybe Mr.

22    Kwanashie can clarify this -- but it's my understanding

23    that when an application is submitted to the Board,

24    that they hold a hearing on the application.

25        MR. KWANASHIE:  Not necessarily.  At least not

26    under 17a-586, there's no hearing held usually.

27        THE COURT:  Didn't you say, Mr. Kwanashie, that

23

1    there are times when there are emergencies made and the

2    Board agrees to a transfer?

3        MR. KWANASHIE:  Right.

4        THE COURT:  For example, if a person were at a

5    lower stage of confinement, and they became violent and

6    danger to the community, what have you --

7        MR. KWANASHIE:  Yes.

8        THE COURT:  -- then the warden or the

9    superintendent could ask the Board to put them back

10   into Whiting --

11       MR. KWANASHIE:  Absolutely.

12       THE COURT:  -- and they would do that without

13   holding a hearing?

14       MR. KWANASHIE:  Without a hearing.  It's up --

15       THE COURT:  Well, that was my point.  Perhaps, it

16   needs to be further considered by you.  But I just

17   think there's enough law out there and enough procedure

18   out there to show that a hearing is not held every

19   time -- it says at any time.

20       I know you may differ with the ruling, but I think

21   that that's the basis of it or a basis of it.  I

22   wouldn't say the basis of it.  But it is one of the

23   basis that the Court relied on in finding that the

24   determination does not mandate a hearing and,

25   therefore, -- in all cases -- and, therefore, 4-166 --

26   183, which talks about an appeal from a final decision,

27   and 4-166, which defines what a final decision is,

24

1        hasn't been met here.

2            All right.  So we'll take -- excuse me?

3            (Off record).

4            THE COURT:  Yes.  I'm dismissing the case.  Thank

5        you very much.  Very interesting issue.

6            (Whereupon, this matter concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

25

1                   SUPERIOR COURT

2          JUDICIAL DISTRICT OF NEW BRITIAN

3                  AT NEW BRITAIN

4

5   PETER HOFFMAN              :      CV01-0507289 S

6   V.                        :      May 14, 2001

7   PSYCHIATRIC SECURITY REVIEW:

8   BOARD                     :

9   _____:

10                C E R T I F I C A T E

11

12        I, Donna L. Peluso, Court Reporter/Monitor, certify

13   that the foregoing is, to the best of my ability, a true and

14   accurate phonetic transcription of the proceedings had in the

15   above-entitled case, before The Honorable Henry S. Cohn,

16   Judge.

17        This the 1st day of June, 2000.

18

19

20

21   _____

22        Donna L. Peluso

23        COURT REPORTER/MONITOR

24

25

26

27

# APPELLATE COURT

## STATE OF CONNECTICUT

NO. A.C. 21944

PETER HOFFMANN

V.

PSYCHIATRIC SECURITY REVIEW BOARD

October 24, 2001

# ORDER

AFTER HEARING AS TO WHY THE APPEAL SHOULD NOT BE DISMISSED AS MOOT IN LIGHT OF THE FACT THAT THE PLAINTIFF HAS RECENTLY BEEN TRANSFERRED TO A LESS RESTRICTIVE FACILITY, IT IS HEREBY ORDERED THAT THE APPEAL IS DISMISSED.

BY THE COURT,

ASSISTANT CLERK-APPELLATE

NOTICE SENT: October 24, 2001
SUZANNE L. MCALPINE, D.A.P.D.
PATRICK KWANASHIE, A.A.G.
RICHARD J. LYNCH, A.A.G.
JD, NEW BRITAIN CV01 0507289
HON. HENRY S. COHN
TOPAC

dcm

STATE OF CONNECTICUT

| | | |
|---|---|---|
| NO. CV 02 0512529S | : | SUPERIOR COURT |
| | | |
| ANTHONY DYOUS | : | JUDICIAL DISTRICT OF |
| Connecticut Valley Hospital | | |
| Whiting Forensic Institute | | |
| Middletown, Connecticut 06457 | : | NEW BRITAIN |
| | | |
| v. | | |
| | | |
| PSYCHIATRIC SECURITY | | |
| REVIEW BOARD | | |
| 505 Hudson Street | | |
| Hartford, Connecticut 06106 | : | March 25, 2002 |

PRESENT: HONORABLE HENRY S. COHN, JUDGE

**JUDGMENT**

This action, in the nature of an appeal from a decision of the defendant, Psychiatric

Security Review Board, came to this court on January 29, 2002 and thence to later dates when

the parties appeared and were at issue to the court, as on file, and thence to the present time.

The court, having heard the parties, finds that the defendant's motion to dismiss should

be and is hereby granted.

WHEREUPON, it is adjudged that the plaintiff's appeal be and it is hereby dismissed.

By the Court

*Kerry Cohn*

Kerry Anne Colson, Court Officer

*2 copies mailed to Appellate Court
copies mailed to all parties of record*

SUPERIOR COURT

May 8  11 20 AM '02

FILED

1   No. CV02-0512529 S

2   ANTHONY DYOUS                        :   STATE OF CONNECTICUT

3   v.                                   :   SUPERIOR COURT

4   PSYCHIATRIC SECURITY REVIEW          :   JUDICIAL DISTRICT OF

5   BOARD                                :   NEW BRITAIN AT NEW BRITAIN:

6   —————————————————————————————        :   March 25, 2002

7

8   B E F O R E:

9            The Honorable Henry S. Cohn, Judge

10

11  A P P E A R A N C E S:

12          On behalf of the Plaintiff:

13          Public Defender's Office

14          Connecticut Valley Hospital

15          Dix Hall

16          P.O. Box 351

17          Middletown, CT 06457

18      BY:  Monte Radler, APD

19          On behalf of the Defendant:

20          Attorney General's Office

21          55 Elm Street

22          P.O. Box 120

23          Hartford, CT 06141-0120

24      BY:  Maite Barainca, ASA

25

26                   DONNA L. PELUSO

27                   COURT REPORTER/MONITOR

1          THE COURT:  All right.  The Court is going to rule

2     as follows:  I don't see any reason to change what I

3     said in Hoffman, subject to the plaintiff having the

4     right to appeal, as it was attempted in Hoffman.  The

5     only thing is that Hoffman it never came up.  And now

6     that it's been raised, I think it's even a stronger

7     case, because section 4-186(f) states that -- has

8     carved out the limitations.

9          The time our UAPA was adopted, the legislature

10     intended to carve out certain areas, which they didn't

11     want to have become fully involved with 4-183.  And

12     they said you can only use the provisions which are set

13     forth in 17a-597.  And when you have an administrative

14     appeal, and I think everybody agrees with this, when

15     you are limited by the legislature to the language of

16     the statute, you have to comply with the statute

17     without question.

18          And, of course, we do have the Champagne case,

19     which says -- that's the last line of the Champagne

20     case, and I see no reason to change the holding of

21     Champagne.  It gives you two items of 17a-584 that may

22     be appealed, and that is if they find that the

23     acquittee should be conditionally released, or they

24     find the acquittee is a person that should be

25     confined.  And I don't think that the level of

26     confinement comes within the meaning of the word

27     "confined".

1    Even if we put this -- when you can take an
2    administrative appeal and limitations on taking
3    administrative appeals, which the legislature has
4    written right into the statute, even if we take that
5    away, we have to go back to 17a-599.  And that by its
6    very language says that the Court makes a -- rather the
7    Board, after the hearing, makes a further
8    determination.  That further determination -- any where
9    you look at the word "determination," it's clear it's
10   not a hearing.
11        A further determination is not a hearing.  And if
12   it's not a hearing -- it could be a hearing, if they
13   wanted to -- but they don't have to do it by a hearing.
14   And there may be times when they don't even have to
15   hold a hearing, but we don't have to get to the issue
16   of whether the transfer should take place.  That's a
17   very interesting point, but I don't even think we have
18   to reach that, because they have to make a further
19   determination, that could be made immediately after the
20   hearing.  It could be made two days after the hearing.
21   It's not a hearing as used in this statute.
22        And so putting aside even Champagne, and just
23   talking about what a final decision is under 4-183a, it
24   doesn't appear to the Court that this is a final
25   decision for the same reasons that were stated in
26   Hoffman.   And so the Court is going to dismiss the
27   appeal.

37

1       MR. RADLER:  If your Honor pleases, to the extent

2  that I need to take an exception to your Honor's

3  ruling --

4       THE COURT:  Excuse me?

5       MR. RADLER:  To the extent that I need to take an

6  exception.

7       THE COURT:  Oh, yes.  I would expect you would

8  want to continue with the same -- maybe the same result

9  will happen in Hoffman.  Maybe they'll transfer him

10  again.

11      MR. RADLER:  It would be nice to get this issue

12  decided, though.

13      THE COURT:  Right.  All right.  Take care.

14      (Recess.)

15

16

17

18

19

20

21

22

23

24

25

26

38

SUPERIOR COURT

JUDICIAL DISTRICT OF NEW BRITIAN

AT NEW BRITAIN


ANTHONY DYOUS                    :        CV02-0512529 S

v.                               :        March 25, 2002

PSYCHIATRIC SECURITY             :

REVIEW BOARD                     :

_____:


C E R T I F I C A T E


    I, Donna L. Peluso, Court Reporter/Monitor, certify

that the foregoing is, to the best of my ability, a true and

accurate phonetic transcription of the proceedings had in the

above-entitled case, before The Honorable Henry S. Cohn,

Judge.

    This the 15th day of May, 2002.




                    _Donna L Peluso_____

                    Donna L. Peluso

                    COURT REPORTER/MONITOR

. Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

MEMORANDUM OF DECISION

McWEENY, J.

*1 The parties to this action are the plaintiff, Greg Champagne, and the State of Connecticut Psychiatric Security Review Board (PSRB). The plaintiff brings this action under the Uniform Administrative Procedures Act (UAPA), General Statutes § 4-166, et seq., 4-183. The case presents the issue of whether an acquittee under General Statutes § 53a-13, has the right to Superior Court review of a PSRB determination that his confinement should be in a maximum security setting. The court finds that the right does not exist in an administrative appeal context and dismisses this appeal for lack of subject matter jurisdiction.

The plaintiff, on February 4, 1988, was found not guilty by reason of mental disease or defect of the charge of murder, with respect to the death of his sister-in-law on December 1, 1986. As an acquittee pursuant to 53a-13 the plaintiff was committed to the custody of the Commissioner of Mental Health for a period not to exceed sixty years.

The PSRB is charged under General Statutes § 17a-580, et seq., with the oversight of acquittees. The PSRB is an administrative agency of the state pursuant to the UAPA § 4-166(1).

In reviewing the plaintiff's status, pursuant to General Statutes § 17a- 585, [FN1] the PSRB held a hearing on July 26, 1996. In accordance with the requirement of § 17a-584, the PSRB determined after such hearing, by a decision dated September 6, 1996 (mailed September 9, 1996), that the plaintiff shall remain confined at the **Whiting** Forensic Division of Connecticut Valley Hospital for care, custody and treatment under maximum security conditions. The plaintiff brings this appeal from such decision. The appeal was filed October 23, 1996. Briefs were filed by the plaintiff on May 15, 1997 and the PSRB on July 7, 1997. The case was continued for hearing to June 4, 1998 at the request of the plaintiff's counsel. On the date set for hearing, the plaintiff's counsel was on trial on a criminal case. Counsel for the PSRB agreed to submit the case on the briefs. The plaintiff has waived oral argument.

> FN1. General Statutes § 17a-585 requires the PSRB to hold a hearing and review the status of an acquittee not less than once every two years.

The plaintiff brings this action pursuant to the UAPA. The appeal does not challenge the PSRB decision on the issue of confinement, but only the portion of the order requiring him to be confined under conditions of maximum security. [FN2]

> FN2. The plaintiff briefs the maximum security confinement issue (Plaintiff's Brief, pp. 7-11), a claim that General Statutes § 17a-599 is unconstitutionally vague (Plaintiff's Brief, pp. 11-15), a claim that the violence finding is not supported by substantial evidence (Plaintiff's Brief, pp. 15-19), and a claim of procedural error at the hearing relating to the maximum security issue (Plaintiff's Brief, pp. 19-20).

The PSRB challenges the jurisdiction of the court to consider the issue of whether an acquittee should be confined under conditions of maximum security. The right to appeal an administrative decision is created only by statute and an appellant must exercise the right in accordance with the statute in order for the court to have jurisdiction. *Marshall v. Inland Wetlands Commission,* 221 Conn. 46, 50, 602 A.2d 566 (1992); *New England Rehabilitation Hospital of Hartford, Inc. v. CHRO,* 226 Conn. 105, 120, 627 A.2d 1257 (1993). If the legislature has not created statutory authority for an appeal from an administrative agency, the Superior Court does not have jurisdiction to hear the appeal. *Figueroa v. C & S Ball Bearing,* 237 Conn. 1, 675 A.2d 845 (1996); *Killingly v. Connecticut Siting Council,* 220 Conn. 516, 522, 600 A.2d 752 (1991); *Toise v. Rowe,* 44 Conn.App. 143, 146, 687 A.2d 557 (1997).

*\*2* The PSRB decision resulted from a § 17a-585 review which requires the board to make a finding and act pursuant to § 17a-584.

Section 17a-584 requires the PSRB to make a finding of the acquittee's mental condition and order one of three options; discharge from custody, conditional release from custody or continued confinement. In this case, the PSRB found the plaintiff to be suffering from a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others. Thus, it ordered his continued confinement as required after such finding under § 17a-584.

General Statutes § 17a-597 [FN3] provides for administrative appeals to the Superior Court only as to PSRB decisions under subsection (2) (conditional release) or (3) (confinement) of § 17a-584; and § 17a-587 (temporary leaves).

> FN3. General Statutes § 17a-597. (Formerly Sec. 17-257r). Appeal of board orders and decisions. (a) Any order of the board entered pursuant to subdivision (2) or (3) of Section 17a-584 or pursuant to Section 17a-587 may be appealed to the Superior Court pursuant to Section 4-183. The board shall give notice of the right to judicial review to the acquittee, counsel for the acquittee and the state's attorney. (b) A decision by the board that the acquittee is a person who should be discharged made pursuant to subdivision (1) of Section 17a-584, Section 17a-592 or subsection (d) of Section 17a-593 shall not be subject to judicial review pursuant to Section 4-183.

The continuation of the plaintiff's placement at a maximum security facility is not a § 17a-584 decision. The scope of § 17a-584 is limited to a mental condition finding, a dispositional decision (discharge, conditional release or confinement); and within confinement decisions, a placement in either a hospital for psychiatric disabilities or with the Commissioner of Mental Retardation. The placement *within* the hospital for psychiatric disabilities is neither a § 17a-584 or § 17a-587 decision. It is rather a decision pursuant to § 17a- 599, which requires that when the PSRB determines that an acquittee must be confined, it must also determine whether the acquittee is so violent as to require confinement under conditions of maximum security.

The court lacks jurisdiction under § 17a-597 in that the maximum security placement is not a § 17a-584 or § 17a-587 decision, from which an administrative appeal would be allowed. Additionally, the plaintiff is not entitled to review under § 4-183(a). Section 4-186(f) [FN4] specifically confines judicial review of PSRB decisions to those decisions described in § 17a-597. As previously noted, § 17a-597 does not give the court jurisdiction over this appeal.

> FN4. General Statutes 4-186(f): "The provisions of Section 4- 183 shall apply to the Psychiatric Security Review Board in the manner described in Section 17a-597 ..."

The appeal is dismissed.
Conn.Super.,1998.
Champagne v. Lewis
1998 WL 321831 (Conn.Super.)
END OF DOCUMENT

Copr. (C) West 2003 No Claim to Orig. U.S. Govt. Works