UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| ROBERT KALMAN, | : | PRISONER |
| *Pro Se, Plaintiff,* | | |
| V. | : | Civil Action No. 3: 03cv 671 |
| | | (DJS) (TPS) |
| ROBERT BERGER, et al., | : | |
| *Defendants,* | | *December 12, 2003* |

## DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS

ROBERT KALMAN declares under penalty of perjury:

1. I am the pro se, plaintiff in the above captioned civil action. The complaint alleges that I was ordered confined to the most restrictive setting in a maximum-security facility by the defendants Robert Berger, John Ryan, Janet Williams, Sylvia Cancela and Susan Blair after a finding by defendants that I am "so violent" that I need custody, care and treatment in accordance with Connecticut General Statute Section 17a-599.

2. I was first admitted to Whiting Forensic Institute on October 13, 2000 via a Psychiatric Emergency Certificate for observation. On 10/13/00, I was under police hold pending adjudication on criminal charges. My stay at the Institute was without incident and the Diagnostic Team from the Institute requested consultant services from Dr. Paul Ambel, M.D. (C.F.P. from Yale).

3. On November 9, 2000, Dr. Paul Amble came to see me at the Institute for the purpose to conducting psychiatric evaluation and a risk assessment before I would be

1

discharged. Dr. Amble concluded that I could be discharged and summarized his findings as follows: "Based on the information reviewed, Mr. Kalman would not present a significant risk to himself and others if discharged. In his current, cognitively intact state he is able to rationally describe how he would tolerate a wide variety of outcomes if discharged from returning home and being a caregiver to his child to returning to jail. Furthermore, he is able to appropriately and reasonably discuss his response if confronted with a prolonged period of incarceration." Additionally, Dr. Ambel concluded, "should med. non-compliance or substance abuse occur in the community, at a minimum, DCF should be contacted to assess whether the child is being properly cared for." Attached to this Declaration as Exhibit A, <u>Discharge Summary</u>, p, # 3.

4. My family informed the Diagnostic Team that I'll be returning home, and the Team made arrangements for treatment in the community on outpatient basses in a Dual Diagnosis Intensive Outpatient Program. Attached to this Declaration the statement of my Individual Therapist from Harbor Health Services Exhibit B.

5. My Axis. I diagnosis in 2000, on discharge from the Institute was Bipolar Disorder, most recent episode manic, in remission and I was on psychotropic medications as reflected in the <u>Discharge Summary</u>. I cooperated with treatment as recommended by Dr. Ambel and my psychiatrist at Harbor Health Services. I was not involved in violent behaviors from the date of my discharge from the Institute and I was admitted

again to the Institute on 10/30/01 after the finding of the jury of not guilty by reason of mental diseases or defect, Conn. Gen. Stat. Sec., 53a-13.

6. Shortly after the second admission (10/30/01) to the Institute, Dr. Carre and the Diagnostic Team discontinued my psychotropic medication regiment. My mental status has remained stable. The diagnostic team had established that my mental condition reflects a primary diagnoses of substance dependence on Axis: I. and Adult Antisocial Personality Disorder under Axis: II. During my stay at Whiting I was non-violent, cooperative and participated in activities. However, I reached an impasse with the Unit Psychiatrist. On January 10, 2003, Dr. Carre testified under oath before the Connecticut Psychiatric Security Review Board and his testimony revealed that I could be placed in a least restrictive setting. Dr. Carre also stated that the diagnostic team did not discover any significant mental disorder.

7. Dr. Sabita Rathi my psychiatrist at the time of the hearing 1/10/03 also stated under oath that my mental condition is intact and I was not a management problem. Dr. Rathi concurred in diagnosis with Dr. Carre and with the Whiting Forensic Diagnostic Team's finding. Defendant Robert Berger quoted a report of Dr. Peter Zeman on the record. Dr. Zeman's report also provided that I can be productively placed in a less restrictive setting.

8. The finding of the treatment professionals and all the clinical evidence supporting those findings, at most, demonstrates a possibility that I might decompensate into

dissociative condition, upon the disinhibiting effects of alcohol and cocaine, should I resume their use, and while in such a state, might possibly present a risk of danger to harm myself or others.

9. On February 21st, 2003, the defendants issued a <u>Memorandum of Decision</u>, ordering me confined to the maximum-security setting of Whiting Forensic Institute. The <u>Memorandum of Decision</u> issued on February 21, 2003 states that Robert Kalman "is so violent that he requires confinement within a maximum-security setting."

10. I am held under the most restrictive setting under conditions of maximum-security that has a harmful effect and severely diminishes my everyday life activity and my family relations. I am not allowed the consideration for temporary leaves from this setting, and I am not eligible to be considered for recommendation for conditional release until I am transferred to a less restrictive setting.

11. I am automatically considered dangerous and placed in a transport belt, in shackles and handcuffs when I am transported to a medical appointment on the hospital grounds or off the hospital grounds. There is no regard for individualized consideration of my current mental status. I am placed in mechanical restraints for transport without a risk assessment. I am denied access to rehabilitation service's and leisure activities afforded to civilly committed patients and to other patients who are committed to the jurisdiction of the defendants.

12. <u>Defendants' Answer To Amended Complaint</u> under paragraph 7 states that; "Paragraph 7 of the Amended Complaint is admitted to the extent that Dr. Sabita Rathi had been with the plaintiff for two months and she testified that it is "the practice to observe them for approximately six months before we recommend a transfer to the Board" and **she requested additional time with the plaintiff.**" Attached to Declaration as Exhibit C.

13. The truth is that Dr. Sabita Rathi did not request for additional time because on January 10, 2003, the day she testified before the defendants was her last day of work at Whiting. As a result of the State budget cuts Dr. Sabita Rathi was temporarily replaced. The week before the hearing of January 10th, 2003, during community meeting Dr. Sabita Rathi and the Unit # 4 Treatment Team made the announcement of her departure. Defendants are misinformed or they are misrepresenting the facts.

14. I have been confined under conditions of maximum security for two years and my confinement in this setting is not beneficial, it is harmful and unjustified. I have not been in any physical conflict with any other patient or a staff member. I made no threats to harm others or myself. Basically I am warehoused in this institution under the pretext that I am mentally ill to the extent that I am an imminent danger. The defendants also labeled me as being *"so violent"* that I need custody care and treatment as proscribed in the provision of Conn. Gen. Stat. Sec., 17a-599.

15. All my medical records reflect that I am not acutely psychiatrically ill to a degree requiring psychiatric hospitalization at the present time. I had diagnostic assessments from the Diagnostic Unit and from Dr. Peter Zeman, M.D., THE INSTITUTE OF LIVING, and from Dr. Frank Fortunati, MD, JD. OFFICE OF COURT EVALUATIONS.

16. The defendants in their Motion to Dismiss assert that my complaint shall be dismissed because I have an appeal pending in Superior Court and that court can address the matter. I disagree because my appeal in Superior Court asserts that the defendants should have (1) discharge me from their jurisdiction rather than (2) confine me to a psychiatric hospital. As reflected by Exhibits 1, 2 and 3 attached to the Motion in Opposition it is evidenced that the Administrative Appeal is restricted to Conn. Gen. Stat. sec., 17a-584. My action before the Honorable Court in the present action is challenging the alleged due process violations that took place after the hearing when the defendants rendered a finding that I am *"so violent"* that I need to be confined under conditions of maximum-security see, Sec., **17a-599**. The complaint is also challenging the violation of my rights under the ADA.

17. In the Administrative Appeal I am not seeking a Declaration of my Constitutional Rights, and the defendants would be allowed at any time in the future to confine me to maximum-security by an order without evidence that I am violent.

18. The Honorable Henry S. Chon explained that the legislature intended **to carve out certain areas, of Section 4-183 by referencing back to the PSRB statute, Section**

**17a-597**. Conn. Gen. Stat. Sec. 17a-599 is not integrally connected to Sec., 17a-584 and is also not integrated in Sec. 17a-597 therefore is not appealable in to the Superior Court. Attached to the <u>Motion in Opposition</u> are the transcripts, the court, Cohn, J., granting the defendants **MOTION TO DISMISS** finding that **the level of confinement is not appealable to the Superior Court.**

19. For the reasons stated in the memorandum of law and exhibits-medical records submitted with the motion in opposition, these undisputed facts establish that abstention is inappropriate. Accordingly, I am respectfully requesting the Honorable Court to deny defendants <u>Motion to Dismiss</u>.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

December 12, 2003

Robert Kalman
Whiting Forensic Institute
70 O'Brien Drive
Middletown, CT 06457
Tel: (860) 346 9408

## **CERTIFICATION**

I hereby certify that a copy of the forgoing <u>Declaration in Support of Plaintiff's Motion in Opposition,</u> was mailed in accordance with Rule 5 (b) of the Federal Rules of Civil Procedure on this 12th, day of December 2003 to:


Richard J. Lynch
Assistant Attorney General

Henry A. Salton
Assistant Attorney General

Kerry Anne Colson
Assistant Attorney General

55 Elm Street, P. O. Box 120
Hartford, CT 06141 – 0120


                                                    Robert Kalman, Pro se,
                                                    Whiting Forensic Institute

**CONNECTICUT VALLEY HOSPITAL**
P.O. BOX 351
MIDDLETOWN, CONNECTICUT 06457
860-262-6325

## CERTIFICATION

RE: _____Robert Kalman_____      MPI #: _____132638_____

The enclosed Discharge Summary for hospitalization of 10/13/2000 – 11/15/2000 by Dr. Kohanski is hereby certified to be a true copy of this Discharge Summary from the medical records of the above-mentioned individual.

The records were made in the regular course of business of Connecticut Valley Hospital*, and it is the regular course of such business to make a record at the time of the transaction recorded therein or within a reasonable time thereafter.

These are being submitted to your care from Connecticut Valley Hospital and should be handled according to the requirements of State and Federal laws regarding confidentiality of patient records. Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required by law and no information from such records may be transmitted to anyone else without written consent or authorization as provided for under Connecticut General Statutes, Chapter 899 and 368x; Sections 19a-126h, 19a-581 through 590, and Federal Regulations 42 CFR 2.

_____
Linda Gagnon, RHIT., Director Health Information Management
Connecticut Valley Hospital   (860) 262-6325

Subscribed and sworn to me this _____4th_____ day of _____November_____, 2003.

My commission expires _____3-31-08_____

_____
Notary Public

\*   Medical Records being maintained by Connecticut Valley Hospital include:
Fairfield Hills Hospital             Whiting Forensic Institute
Norwich State Hospital           Dutcher Treatment Center
Berkshire Woods Treatment Center   Boneski Treatment Center

CONNECTICUT VALLEY HOSPITAL
WHITING FORENSIC DIVISION
DISCHARGE SUMMARY

Name: KALMAN, Robert
MPI: 132638
Date of Admission: 10/13/00
Date of Dictation: 11/14/00
Date of Discharge: 11/15/00

Page 1

**Reason For Admission And History Of Illness:** The patient was referred on a Physician's Emergency Certificate from Yale New Haven Hospital after medical clearance after ingesting a mercuric chloride capsule encased in a latex glove in an apparent suicide attempt at CMHC.

Mr. Kalman is a 30-year old divorced white male from Hungary, with a long history of substance (alcohol and cocaine) dependence and multiple encounters with the law. Charges have ranged from Felony Weapon and Drug Possession to Calling in a Bomb Threat to the New Haven Courthouse. On presentation, Mr. Kalman related a long, rambling, confusing account of events of the previous 6 months culminating in the psychiatric admission to CMHC and the diagnosis of Schizoaffective Disorder. Reportedly, he had ingested a mercury chloride capsule at CMHC on 10/12/00 to avoid being taken to court. He was medically cleared at Yale New Haven Hospital, bond was set at $550,000 and the patient was transferred to our unit for treatment and stabilization.

Mental status examination on admission revealed a freshly showered, casually groomed Caucasian male dressed in a T-shirt and pajamas. He was alert and cooperative. Speech was noted to be somewhat pressured with an elevated volume. Though processes were circumstantial, overly inclusive and detached. At times he became tangential and grandiose. There was no suicidal ideation, intent or plan at admission as well as no auditory or visual hallucinations. His mood and affect were elevated and expansive. His insight and judgement were assessed to be very impaired.

Psychosocial assessment is significant for Mr. Kalman reportedly being raised in an extremely abusive household. Mr. Kalman's self report is that his father was "a sick man" and that he used to "torture" all the family. Mr. Kalman related that he always feared his father would kill him and that his father had on numerous occasions stated that he wished to strangle him (the patient). Mr. Kalman stated that on several occasions his father attempted to "choke" him.

**Diagnoses On Admission:**

*Psychiatric*
AXIS I:        295.70        Schizoaffective Disorder, bipolar type vs. bipolar disorder

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes. Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

**Discharge Summary**

Name: KALMAN, Robert                MPI#: 132638                Page 2

**Diagnoses continued...**

|  | 305.00 | Alcohol Abuse |
|---|---|---|
|  | 305.60 | Cocaine Abuse |
| **AXIS II:** | 301.7 | Antisocial Personality Disorder |

*Physical*

**AXIS III:**    401.9    Hypertension
Mild Cerebellar deficits caused by alcohol
H/O of Positive PPD with negative Chest X-ray
S/P attempted mercuric chloride ingestion (medically cleared after evaluation at Yale New Haven Hospital)

**AXIS IV** *(Stressors):*

[x] 0 Problems with primary support group
[ ] 1 Problems related to the social environment
[ ] 2 Educational problems
[ ] 3 Occupational problems
[ ] 4 Housing problems
[ ] 5 Economic problems
[ ] 6 Problems with access to health care services
[x] 7 Problems related to interaction with the legal system/crime
[ ] 8 Other psychosocial and environmental problems

**AXIS V:**    Current GAF=55, highest in past year 65

**Treatment And Course Of Hospitalization:** Mr. Kalman was admitted to Whiting Forensic Division of Connecticut Valley Hospital, Unit 1 and was initially placed on one-to-one observation for unpredictable behavior. Prior to admission to our hospital, Mr. Kalman had been placed on a mood stabilizer as well as an antipsychotic. A review of the records prior to admission indicated Mr. Kalman's symptoms had significantly improved by the time he was admitted to our unit. Our initial findings included goal-directed thought processes with periods of tangentiality and circumstantiality. His affect was noted to be rapidly shifting between tearfulness and happiness. He described symptoms of flashback phenomenon, exaggerated startle as well as difficulty concentrating. There was an elaborate explanation of the circumstances leading to his admission. On 10/17/00, the one-to-one observations were discontinued and he was placed on Q15-minute observations. On 10/18 we were able to discontinue the Q15-minute observation without incident.

Medications were adjusted. The major changes from admission included a decrease in his Klonopin, which had initially been at 1mg PO Q HS, and was changed to 0.5mg PO Q HS. Depakote had been ordered at 500mg PO Q a.m. and Q 4:00 p.m. and 750mg PO Q 8:00 p.m. This was changed to 1750mg PO Q 8:00 a.m. and 1000mg PO Q 8:00 p.m. Blood pressure remained stable ranging from a high of 134/84 to a low of 110/66 without complication. Throughout this entire admission there was no evidence of self-destructive behavior.

On 10/24/00, Mr. Kalman's psychiatric symptoms of manic-hypomanic behavior had significantly resolved. This process continued through 10/31/00. He continued to contract

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

**Discharge Summary**

Name: KALMAN, Robert          MPI#: 132638          Page 3

for safety. He denied suicidal ideation, had plans for the future and gave his "word" that he was not going to hurt himself. Mr. Kalman reports that a major mistake made by initial evaluators was that they did not ask him for his word on safety. Additionally, some of the initial self-destructive behavior was a function of acute substance intoxication. His hospitalization was without incident and on 11/9/00 the Consulting Forensic Psychiatrist did an assessment. His conclusion and recommendation were as follows, "Based on the information reviewed, Mr. Kalman would not present a significant imminent risk to himself and others if discharged. In his current, cognitively intact state he is able to rationally describe how he would tolerate a wide variety of outcomes if discharged from returning home and being a caregiver to his child to returning to jail. Furthermore, he is able to appropriately and reasonably discuss his response if confronted with a prolonged period of incarceration." Recommendations upon discharge included consideration of an abuse if Mr. Kalman was to be released to the community; consider at least weekly ACT team visits to his home situation, his ability to tolerate a care giving role and check his weekly med. box and following random urine toxicology screen. Their final recommendation was "should med. non-compliance or substance abuse occur in the community, at a minimum, DCF should be contacted to assess whether the child is being properly cared for."

**Summary Of Medical And Laboratory Findings And Consultations:** A Valproic Acid level on 10/19/00 was 75. CBC with differential was within normal limits. A chemistry-12 was significant only for an elevated cholesterol at 245. Hepatitis C antibody was negative. A urine toxicology screen on 10/14/00 was negative.

**Discharge/Aftercare Plan And Treatment Recommendations:** Treatment recommendations were included in the course of hospitalization from the consultation with the Consulting Forensic Psychiatrist. Additionally, we recommend continued compliance with all aspects of his current treatment plan including medication compliance and substance abstinence. We also recommend that the Klonopin be tapered and discontinued once clinically appropriate. He has an appointment with the Regional Mental Health Center on November 17, at 9:30 a.m. to meet with Karen Zeigler. The Community Health Center had visited the Forensic Unit during Mr. Kalman's admission to discuss his case.

**Medications On Discharge:**

olanzapine 20mg PO 8:00 p.m.
Klonopin 0.5mg PO Q HS (taper as clinically indicated)
Atenolol 50mg PO Q a.m.
Depakote 750mg PO Q 8:00 a.m., 1000mg PO Q 8:00 p.m.
Folate 1mg PO Q a.m.
Thiamine 100mg PO Q a.m.
MVI 1 tablet Q a.m.

**Discharge Diagnoses:**

AXIS I:     296.46          Bipolar Disorder, most recent episode manic, in remission

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes. Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

**Discharge Summary**

Name: KALMAN, Robert            MPI#: 132638            Page 4

**Diagnosis continued...**

|          |        |                                                                 |
|----------|--------|-----------------------------------------------------------------|
|          | 303.90 | Alcohol Dependence                                              |
|          | 304.20 | Cocaine Dependence in remission in a controlled environment    |
|          |        | R/O Post Traumatic Stress Disorder                              |
| AXIS II: | 301.7  | Antisocial Personality Disorder                                 |

*Physical*

| AXIS III: | 401.9 | Hypertension |
|-----------|-------|--------------|
|           |       | Mild Cerebellar deficits caused by alcohol |
|           |       | H/O of Positive PPD with negative Chest X-ray |
|           |       | S/P attempted mercuric chloride ingestion |
| AXIS IV:  |       | Problems related to the social environment |
|           |       | Problems related to interaction with legal system/crime |
| AXIS V:   |       | Current GAF=60 |

**Condition On Discharge:** Stable. Mr. Kalman's mental status examination was significantly improved. Speech was of normal rate, rhythm and volume with no further evidence of pressured speech or rapid speech. Mood was euthymic. There were no complaints of suicidal ideation or homicidal ideation either at discharge and for several weeks prior to discharge. He had plans for the future. His mood symptoms have improved and he is substance free.

**Prognosis:** Guarded. If Mr. Kalman remains substance free and follows up with treatment as indicated the prognosis would improve.

*[signature]*

Renee S. Kohanski, M.D.
Attending Psychiatrist

DD: 11/14/00
DR: 11/15/00
DT: 11/15/00

RSK/dg

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.



# Harbor Health Services, Inc.

14 Sycamore Way · Branford, Connecticut 06405-6551 · (203) 483-2650 · Fax: (203) 483-2659

May 23, 2002

RE: Kalman, Robert

To Whom It May Concern:

This letter is to inform that Mr. Robert Kalman started treatment on December 19, 2000 in our Dual Diagnosis Intensive Outpatient Program (three hours daily, three days per week) as well as individual therapy until October 5, 2001.

Mr. Kalman was compliant with all aspects of the program and progress was noted. Accordingly, Dr. Mohrer and I feel it would be to Mr. Kalman's benefit if he could return to treatment and work on both his substance abuse and trauma issues.

I trust that you will consider this request. If you require additional information, please contact me at the above address or phone number.

Sincerely yours,

*Claudette Blain Hauck*

Claudette Blain Hauck, LCSW

klm

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT KALMAN, PRO SE *Plaintiff* | CIVIL ACTION NO. 3:03CV671 (DJS) |
| v. | |
| ROBERT BERGER, JONH RYAN, JANET WILLIAMS, SYLVIA CANCELA SUSAN BLAIR *Defendants* | OCTOBER 28, 2003 |

### DEFENDANTS' ANSWER TO AMENDED COMPLAINT

The plaintiff's amended complaint dated August 20, 2003 begins with a preliminary statement, which is not part of the amended complaint. Therefore, the defendants are not responding to it. To the extent that the Court determines such a statement requires a response, the defendants leave the plaintiff to his proof.

1. Paragraph 1 of the amended complaint is admitted.

2. As to paragraph 2 of the amended complaint, the defendant admits that Dr. Alexander Carre testified the plaintiff has "remained throughout his hospitalization -- actually part of it, polite and cooperative, maintaining a quiet routine on the unit, and generally has not been a management problem."

3. Paragraph 3 of the amended complaint is admitted to the extent that Dr. Carre testified that he had not been able to diagnose the plaintiff with any disorder or illness that qualifies as a defense to criminal conduct pursuant to Connecticut General Statute 53a-13.

4. Paragraph 4 of the amended complaint is admitted to the extent that Dr. Carre testified that the plaintiff's mental status had remained stable after a rather long period without medication until May or June of 2002, when a different picture of Mr. Kalman emerged: "He

began to engage the treatment team in a one upmanship, questioning the decisions made, minimizing the validity of othersmade, and not respecting his own boundaries."

5. Paragraph 5 of the Amended Complaint is admitted to the extent that Dr. Carre testified that "maybe" Dutcher Hall could better address the needs of the plaintiff.

6. Paragraph 6 of the amended complaint is admitted.

7. Paragraph 7 of the amended complaint is admitted to the extent that Dr. Sabita Rati had been with the plaintiff for two months and she testified that it is "the practice to observe them for approximately six months before we recommend a transfer to the Board" and she requested additional time with the plaintiff.

8. Paragraphs 8 and 9 of the amended complaint are admitted.

9. Paragraphs 10, 11, and 12 of the amended complaint are denied.

10. Paragraph 13 of the Amended Complaint is denied.

11. Paragraph 14 of the amended complaint is admitted to the extent that Connecticut General Statutes § 17a-599 reads "At any time the court or the board determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security. Any acquittee found so violent as to require confinement under conditions of maximum security shall not be confined in any hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation unless such hospital or said commissioner has the trained and equipped staff, facilities or security to accommodate such acquittee." To the extent that paragraph 14 deviates from the statute, it is denied.

12. Paragraph 15 of the amended complaint is denied.

13. Paragraphs 16 and 17 of the amended complaint are denied.

2

## AFFIRMATIVE DEFENSES

1. The plaintiff's claims are barred by the doctrine of abstention.

2. The claims against the defendants are barred by sovereign immunity.

                **DEFENDANTS**
                **ROBERT BERGER**
                **JOHN RYAN**
                **JANET WILLIAMS**
                **SYLVIA CANCELA**
                **SUSAN BLAIR**

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Richard J. Lynch
Assistant Attorney General

BY: _____
Henry A. Salton
Assistant Attorney General
Federal Bar No. 07763
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5210
Fax: (860) 808-5385

3