UNITED STATES DISTRICT COURT FILED
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT KALMAN, | : | PRISONER |
| Plaintiff, | | |
| V. | : | Civil Action No. 3:03cv 671 |
| | | (DJS)(RNC) |
| ROBERT BERGER, et al., | : | |
| Defendants, | | January 4, 2003 |

DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

ROBERT KALMAN declares under penalty of perjury:

1.  I am the pro se, plaintiff in the above captioned civil action. I make this declaration in support of my motion for a temporary restraining order and a preliminary injunction to ensure that I receive appropriate treatment services, and increasing levels of freedom and I be permitted to exercise personal responsibility for as much of my daily activities as clinically appropriate in the most integrated and least restrictive setting appropriate.

2.  I also make this declaration in support of my motion for a temporary restraining order and preliminary injunction to ensure that I will be provided with equal services and allowed the consideration for same opportunities as provided to civilly committed patients or other patients committed to the jurisdiction of the defendants Robert Berger, John Ryan, Janet Williams, Silvia Cancela and Susan Blair.

3.  As set forth in the complaint I was ordered confined to the most restrictive setting in a maximum-security facility by the defendants Robert Berger, John Ryan, Janet Williams, Sylvia Cancela and Susan Blair after a finding by defendants that I am "so violent" that I need custody, care and treatment in accordance with Conn. Gen. Stat. Sec., 17a-599.

1

4.  As a direct consequence of the defendants order for my confinement in maximum-security, I am deprived of increasing levels of freedom and I am not allowed the consideration for supervised or unsupervised on-campus passes; I am not allowed to access to activities and employment opportunities afforded to civilly committed patients, and other patients committed to the jurisdiction of the defendants Robert Berger, John Rayan, Silvia Cancela and Susan Blair.

5.  As direct consequence of my confinement in maximum-security I am deprived of the opportunity for the consideration of increasing levels of freedom. My right to freedom of movement is restricted to the Institute courtyard and there is no opportunity to exercise personal autonomy and responsibility for as much of my daily activities as clinically appropriate, in that I am restricted to the Institute. I am not allowed the consideration for participation in activities on the hospital grounds with staff escort regardless of my individual clinical status.

6.  As direct consequence of my confinement in maximum-security I am not allowed the consideration for participation in off campus rehabilitative or leisure activities afforded to civilly committed patients, and other patients committed to the jurisdiction of the defendants Robert Berger, John Rayan, Janet Williams, Silvia Cancela and Susan Blair.

7.  As a direct consequence of my confinement in maximum-security I am not allowed the consideration for temporary leaves for home visits to my family and I am not eligible to be considered for transitional leaves into the community or given consideration for being recommended for conditional release until I am transferred to least restrictive setting of the

Dutcher Service of Connecticut Valley Hospital. (The Institute and the Dutcher Service are both located on the grounds of C. V. H., and part of the Forensic Division of C.V.H.)

8. I am treated unequally by being deprived of equal opportunities without regard for an individualized consideration of my current mental status, the course of my disability, and without a determination of whether my participation in a particular program or activity would pose a danger to others or myself. I am deprived of the consideration for appropriate services and opportunities that has its goal the maintenance of my highest level of functioning and transition in the community.

9. I was first admitted to Whiting Forensic Institute on October 13, 2000 via a Psychiatric Emergency Certificate for observation for unpredictable behavior as a result of a suicide attempt. On 10/13/00, I was under police hold and under a high bond as consequence of my law-braking behavior pending adjudication. My stay at the Institute was without incident and the Diagnostic Team from the Institute requested consultative services from Dr. Paul Ambel, M.D. (C.F.P. from Yale).

10. On November 9, 2000, Dr. Paul Amble came to see me at the Institute for the purpose for conducting a risk assessment before I would be discharged to the community. Dr. Amble concluded that I could be discharged and summarized his findings as follows: **"Based on the information reviewed, Mr. Kalman would [not] present a significant risk to himself and [others] if discharged. In his curren[t], cognitively intac[t] state he is able to rationally describe how he would tolerate a wide variety of outcomes if discharged from returning home and being a caregiver to his child to returning to jail. Furthermore, he is able to appropriately and reasonably discuss his response if confronted with a prolonged period of incarceration."** Additionally, Dr. Ambel concluded that, **"should med. [N]on-**

3

compliance or substance abuse occur in the community, at a minimum, DCF should be contacted to assess whether the child is being properly cared for." The RISK ASSESSMENT 11/9/00, by the CONSULTING FORENSIC PSYCHIATRIST, is attached to Declaration as EXHIBIT D. The treatment team made arrangements for treatment in the community on outpatient basses in DUAL DIAGNOSIS INTENSIVE OUTPATIENT PROGRAM. On 11/14/00, the discharge plan was formulated as reflected by EXHIBIT D, attached See, 11/14/00 "DISCHARGE PLAN" 9:20 A.M., and I was discharged 11/15/00, at 12: 30 P.M., Unit Director's entry as the last entry in my Medical Record in 2000.

11. I was admitted again to the Institute on 10/30/01 after the finding of the jury of not guilty by reason of mental diseases or defect, Conn. Gen. Stat. Sec., 53a-13. Shortly after the juries finding and the second admission 10/30/01 to the Institute, Dr. Carre and the Diagnostic Treatment Team discontinued my psychotropic medication regiment. My mental status has remained stable. During my stay at Whiting I was non-violent, cooperative and participated in activities. However, I reached an impasse with the Unit Psychiatrist. On January 10, 2003, Dr. Carre testified under oath before the defendants Robert Berger, John Ryan, Janet Williams, Silvia Cancela and Susan Blair. Dr. Carre' stated that "[W]e have [not] found any significant [e]vidence of a mental disorder. [W]e simply established the diagnosis of substance use disorder compounded with a personality disorder that put him at risk of offending in the community. Thank you." Dr. Sabita Rathi my psychiatrist at the time of the hearing 1/10/03 also stated under oath that: "On mental status exam, he's alert, oriented, cooperative. He shows no signs of psychomotor agitation. His mood is euthemic. His affect is full range. There's no indication of suicidal or homicidal ideation. There's no perceptual disturbances and no indication of other psychotic symptoms, including paranoia and delusions." HEARING TRANSCRIPT- EXHIBIT E.

4

12. Dr. Rathi concurred in diagnosis with Dr. Carre and with the Whiting Forensic Diagnostic Team's finding. Defendant Robert Berger quoted a report of Dr. Peter Zeman on the record. Dr. Zeman's report also provided that I can be productively placed in a less restrictive setting. The finding of the treatment professionals and all the clinical evidence supporting those findings, at most, demonstrates a possibility that I might decompensate into dissociative condition, upon the disinhibiting effects of alcohol and cocaine, should I resume their use, and while in such a state, might possibly present a risk of danger to harm myself or others.

13. Under cross-examination Dr. Carre' testified that: **"[No], - - I had made it clear that Mr. Kalman has <u>never</u> been violent on the unit."** See, Exhibit E. Pertaining to behavior on the unit Dr. Sabita Rathi stated that: **"To date, Mr. Kalman has not been a management or behavior problem on the unit. He has adjusted well to the unit. He has [not] been in any physical [or] verbal altercations with any staff or patients. He has however, continued to be very focused on legal issues. He spends most of his time when not in groups, writing about legal issues."** See, Exhibit E. On February 21st, 2003, the defendants issued a Memorandum of Decision, ordering me confined to the maximum-security setting of Whiting Forensic Institute. The Memorandum of Decision issued on February 21, 2003 states that Robert Kalman "is **[so] violent** that he requires confinement within a **maximum-security** setting." The defendants claim is with no foundation because I am not violent and there was no testimony on the record provided at the hearing on January 10, 2003. To the contrary all the testimony provided reflects that I am not violent. The label of **"[so] violent"** it refers to stigma to a cluster of negative attitudes and beliefs that arise from the labels associated with individuals with psychiatric disabilities who are found not guilty pursuant to Conn. Gen. Stat. Sec., 53a-13.

14. The stigma of **"[so] violent"** is a label that leads others to avoid socializing, interacting, and providing services to individuals with psychiatric disabilities. This is clearly evidenced by my exclusion from services and the opportunities that are provided to others similarly situated simply due to the fact that they reside in the Dutcher Service of C.V.H.

15. At the hearing on January 10, 2003, Dr. Carre' opined that **"Well, I don't think Whiting is the only place that could take care of Mr. Kalman's needs."** I have been held at the Institute for nearly two and a half years, under conditions of maximum-security that has a harmful effect and severely diminishes my everyday life activity and my family relations. I am automatically considered dangerous and placed in a transport belt, in shackles and handcuffs when I am transported to a medical appointment on the hospital grounds or off the hospital grounds. There is no regard for individualized consideration of my current Mental Status I am placed in mechanical restraints for transport without a risk assessment. I have not been in any physical conflict with any other patient or a staff member. I made no threats to harm others or myself. Basically I am warehoused in this institution under the pretext that I am mentally ill to the extent that I am an emanate danger. In the past two years I witnessed numerous violent assaults that have taken place here. I've seen a female patient assaulted in the courtyard this past summer by staff; while I was a unit two resident in September I eye-witnessed another patient being placed in four-point-mechanical restraints because he could not shut up. This person was not threatening any one he is a severely disabled person and sometimes he can't stop talking.  His legal status is Gen. Stat. Sec., 54-46.

16. In the summer of 2002 a Hispanic individual attempted to commit suicide in the courtyard by hanging. He was sent back to D.O.C. two-weeks later by Dr. Carre' and the unit three Diagnostic Treatment Team. In the past two years two patients died in this institution. One taken place on unit two during a psychiatric code and the second one on unit three a 21 years

old young man from Milford took his own life by hanging himself while he was on fifteen minutes close observation status. Joe was sent hear by a Superior Court Judge because he needed to be protected from himself. This institution had failed to do what it was supposed to do, for Joe. This facility has been cited over and over by the Department of Public Health and also by the Federal Health Care Administration (C.M.M.S.). The federal findings are summarized in numerous reports and the C.E.O. has written numerous plans of corrections. See the reports attached to Declarations submitted by Mr. Dickinson, Mr. Nash, Mr. Pagan.

17. In nearly two and a half years I was never placed in seclusion or was I placed in four-point restraints. I was non-violent and all my medical records reflect that I am not acutely psychiatrically ill to the degree requiring psychiatric hospitalization at the present time. I had thorough diagnostic assessments from the Diagnostic Unit (Dr. Carre'), and from Dr. Peter Zeman, M.D., THE INSTITUTE OF LIVING, and Dr. Frank Fortunati, MD, JD., OFFICE OF COURT EVALUATIONS, Dr. Keith Scott, M.D., and Dr. Sabita Rathi, M.D. and other psychiatrists from the Institute. It is noteworthy that I was discharged in 2000 while I was diagnosed with a 296.46 Bipolar Disorder, most recent episode manic, in remission. On discharge 11/15/00, I was on psychotropic medications (1), Depakote 750mg PO Q 8:00 a.m., 1000mg PO Q 8:00 p.m. and (2), 20mg of Olanzapine; 0.5mg of Klonopin. I was not labeled as to be **"so violent"** in 2000.

18. Individuals such as myself who are imprisoned as the result of a not guilty finding by reason of mental disease or defect can be confined in a variety of settings, often in high-security state facilities for the criminally insane such as the Institute. If, however, it is determined that the individual is disabled to the degree or so violent that he requares a confinement under such a restrictive setting. In practice, psychiatrists rarely disagree about present insanity or mental incompetence to stand trial. In the present case all the expert psychiatric opinions presented at

the hearing before defendants on January 10th, 2003, is clear and demonstrates that my clinical condition had improved significantly since 2000. The clinical evidence and all the testimonies reveal that I did not at the time (2000), nor do I now meet the established criteria for confinement under maximum-security conditions. My present clinical diagnosis does not even meets the established criteria contained in the DMHAS-CVH, policy manual in regards to admission to Connecticut Valley Hospital.

19. The defendants are officers of the State of Connecticut Psychiatric Security Review Board and their finding that I am "[so] violent" that I need to be confined under conditions of maximum-security is such a substantial departure from accepted professional standards that it reflects that defendants did not actually base their decision on any professional judgement standard. There is no evidence in the entire record neither that I am violent nor that I am presently disabled to a degree that I would constitute an imminent danger to others or myself. Freedom from unjustified governmental intrusions into personal security and bodily freedom are basic, historically recognized liberty interests that are protected by the federal constitution.

20. The defendants ordered my confinement under conditions of maximum security therefore they are in possession of the facts. They confined me in the most restrictive setting that is in direct violation of my Federal Constitutional Rights and also in a direct violation of my rights as a class member of the Federal District Court Consent Judgement, William Roe, et al., v. Michael Hogan, et al., Case No. H89-570 (PCD). I am deprived of appropriate treatment services in accordance with an individualized treatment plan, my right to be free from unnecessary restraint has been violated. I am denied the consideration for increasing levels of freedom and responsibility for as much of my daily activities as clinically appropriate. I am confined to a restricted classification setting and I am denied the access to equal services

8

provided to civilly committed patients and other patients committed to the jurisdiction of the defendants Robert Berger, John Rayan, Janet Williams, Silvia Cancela and Susan Blair.

21. Additionally, I am exposed to an environment that is a high-risk environment with a high probability that I be subject to physical assault. Some residents of the Institute are severely disabled and potentially so violent due to a psychiatric disability that they are substantially lacking the capacity to control their conduct. Counsel for the defendants in a response asserts that "there is a law library" at the Institute. There is no law library at the Institute. I draft my pleadings in my dormitory room were I reside with my peers. I don't even have a table in my dorm, I draft my pleadings on my laundry hamper. I share a unit with 22 other individuals similarly situated and our commune area is so small that community meetings are held on the unit corridor because all the 23 of us would not fit in the TV-Room.

22. For the reasons set forth in the memorandum of law filed with this motion, the plaintiff is entitled to temporary restraining order requiring the defendants to arrange for an examination for a plan of transition, and a preliminary injunction requiring the defendants to carry out that plan. For the forgoing reasons, this Honorable Court should grant the plaintiff's motion in all respects. Plaintiff will be severely prejudiced as direct consequence of the excessive and unnecessary delay, which is believed to be an intentional effort by the defendants to gain a tactical advantage.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

January 4, 2003

_____
Robert Kalman
Whiting Forensic Institute
70 O'Brien Drive
Middletown, CT 06457

RICHARD BLUMENTHAL,
ATTORNEY GENERAL

55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

Office of The Attorney General
# State of Connecticut

*Tel: (860) 808-5210*
*Fax: (860) 808-5385*

November 6, 2003

Robert Kalman
Whiting Forensic Division
Connecticut Valley Hospital
70 O'Brien Drive
Middletown, CT 06457

RE:  Kalman v. Berger, et al.
     Civil Action No. 3:03 CV 671

Dear Mr. Kalman:

       I writing to you in response to the interrogatories and request for production of documents you served on each of the named defendants in the above-captioned action. Pursuant to the Federal Rule of Civil Procedure 26(d), a party may not conduct discover prior to a discovery conference meeting under Rule 26(f). The parties must confer and develop a proposed discovery plan to be submitted to the court in writing, addressing the discovery schedule and any modifications to the limits or scope of discovery. For your convenience, I have enclosed copies of the applicable Federal Rules of Civil Procedure.

       I have also taken the liberty of preparing a *draft* Rule 26(f) Report, which we must file with the Court. There are sections in the Report that you must complete on behalf of the plaintiff. Once you have reviewed the document and made your changes, please mail the amended version back to me so that I can put it in final form for our signatures. Once the Rule 26(f) Report has been finalized and submitted to the court for filing, the defendants will respond to your interrogatories and request for production of documents within ten days. Please sign the enclosed copy of this letter and return it to me no later than November 20, 2003 indicating your consent to the defendants extension of time to respond to your discovery requests until after the completion and filing with the court of the Rule 26(f) report.

       Please do not hesitate to contact me if you have any questions.

Very truly yours,

Kerry A. Colson
Assistant Attorney General

HAS/kac
Enclosure

Robert Kalman
November 6, 2003
Page 2


     I do/do not consent to the extended time for defendants response to discovery until ten days after filing of the Rule 26(f) report with the Court.


                        Robert Kalman: _____

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROY SASTROM & ROBERT KALMAN. | : | PRISONER |
| *Plaintiffs* | : | CIVIL ACTION NO. 3:03 CV 671 |
| | : | (DJS)(TPS) |
| v. | : | |
| | : | |
| ROBERT BERGER, JOHN RYAN, | : | |
| JANET WILLIAMS, SYLVIA CANCELA, | : | |
| SUSAN BLAIR | : | |
| *Defendants* | : | November 21, 2003 |

## APPEARANCE

### TO THE CLERK OF THE COURT AND ALL PARTIES OF RECORD:

Please enter my appearance as counsel for defendants Robert Berger, John Ryan, Janet Williams, Sylvia Cancela, and Susan Blair in their official capacities only, in the above-captioned case.

The appearance is being entered in addition to Richard J. Lynch and Henry A. Salton, Assistant Attorneys General, Federal Bar Nos. ct 05764 and 07763, respectively.

Dated at Hartford, Connecticut, this 21st day of November, 2003.

DEFENDANTS

ROBERT BERGER, JOHN RYAN,
JANET WILLIAMS, SYLVIA CANCELA,
SUSAN BLAIR

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Kerry Anne Colson
Assistant Attorney General
Federal Bar No. CT 25241
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5020
Fax: (860) 808-5385
Kerry.Colson@po.state

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Appearance was mailed in accordance with

Rule 5(b) of the Federal Rules of Civil Procedure on this 21st day of November, 2003 to:

Robert Kalman
Whiting Forensic Division
Connecticut Valley Hospital
70 O'Brien Drive
Middletown, CT 06457

Kerry Anne Colson
Assistant Attorney General

2

31

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ROY SASTROM &
ROBERT KALMAN

      v.

ROBERT BERGER, et al.

:                PRISONER
:      Case No. 3:03CV671(DJS)(TPS)

ORDER

Robert Kalman ("Kalman"), the only remaining plaintiff, has filed a motion for leave to file copies of his mental health records under seal. The defendants have not responded to the motion.

Accordingly, the defendants are directed to file their response to Kalman's motions within ten (10) days from the date of this order.

SO ORDERED this 12th day of November, 2003, at Hartford, Connecticut.

Thomas P. Smith
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROY SASTROM & ROBERT KALMAN : | |
| *Plaintiffs* : | PRISONER |
| : | CIVL ACTION NO. 3:03 CV 671 |
| : | (DJS)(TPS) |
| v. : | |
| : | |
| ROBERT BERGER, JOHN RYAN, : | |
| JANET WILLIAMS, SYLVIA CANCELA, : | |
| SUSAN BLAIR : | |
| *Defendants* : | OCTOBER 3, 2003 |

## MOTION FOR EXTENSION OF TIME TO RESPOND TO DISCOVERY

Pursuant to Local Rule of Civil Procedure § 7(b), the defendants, Janet Williams and

Susan Blair, each move for an extension of time to respond to the plaintiff's interrogatories and

request for production of documents served on the undersigned on September 7, 2003.  The

defendants need additional time in order to review the breadth of documents involved in this

case and to meet with the state employees involved to properly respond to the discovery request.

The undersigned hereby respectfully request an extension of time of 30 days from the

court's ruling on the motion for extension of time to respond to discovery

10/28/03 Granted

CVH-136
Rev. 2/99
General Psychiatry Division
Addiction Services Division
Whiting Forensic Division

CONNECTICUT VALLEY HOSPITAL
PROGRESS NOTES

Case 3:03-cv-00671-DJS    Document 46-2    Filed 01/08/2004    Page 16 of 20

KALMAN, ROBERT
DOB:2/19/70   DOA:10/13/00
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
CIVIL ___ #1

Name _____                    MPI# _____

| Disc | Date | Time | Identify Discipline (i.e. Phy. Nursing, SW, Rehab, Psychology, etc) |
|------|------|------|-----|
| progr note | 11/8/00 | 1:20 | (Cont) the discharge plan. Unit director was informed of the same. _____ Hernandez LCSW _____ |
| NSG ALT PNC | 11/08/00 | 3-11 | Pt. remains cooperative to unit rules & routine at this time. Pt. hygiene & appetite remains good. Pt keeps to himself most of the time watching TV. Will continue to observe & report any changes in pt. behavior. ———— C. Turner, FTS |
| MD | 11/9/00 | 10:15 | Janet Olson from the LMHA (Harbor Health) in to discuss discharge plans. |
| MD | 11-9-00 | 12:35 | Consulting Forensic Psychiatrist      Amble x 5882 |

Def. assessed pursuant to the treatment teams request. The consult question is whether Mr. Kalman would present a sig. [imminent] risk to his safety or the safety of others if d/c'd. In this assessment, I reviewed the defs medical record, interviewed staff & interviewed Mr. Kalman for ~ 45 min.

Mr. Kalmans tx hx & legal status is well known to the team and won't be repeated here. Sig. offending in his hx is that ETOH abuse & cocaine abuse are substantial precipitants to his violent behavior, c ETOH being likely the principle instigator.

On MSE the def presents to the team mildly disheveled, he was calm, pleasant and cooperative. His affect was euthymic and he described his mood as fair. Sleep, appetite - good, energy - mildly low.

Note: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899 and 368x and Federal Regulation 42 CFR2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

CVH-136
Rev. 2/99
General Psychiatry Division
Addiction Services Division
Whiting Forensic Division

CONNECTICUT VALLEY HOSPITAL
PROGRESS NOTES

Case 3:03-cv-00671-DJS   Document 46-2   Filed 01/08/2004   Page 17 of 20

Name _____                    MPI# _____

| Disc | Date | Time | Identify Discipline (i.e. Phy. Nursing, SW, Rehab, Psychology, etc) |
|------|------|------|--------------------------------------------------------------------|
|      |      |      | CFE (cont.) |

c/w an anxiety D/o. Insight into mental illness is limited. He also has a plan to no longer consume etOH but believes he can do this by simply saying he won't. Cog AłOx3. Mem intact. We had a detailed discussion about his parental responsibilities if released to the community, particularly those related to his 3½ mo old dau., to which the def responses were appropriate. A detailed discussion of suicidality was revealed ① 25, ② weapon (gun) in home, ③ plan for harming self/others, ④ plan to receive help if he became depressed/despondent + ⑤ insight into early warning signs of what led to prior attempt.

Conclusion & Recommendations

Based on the information reviewed, Mr. Kalman would not present a significant imminent risk to himself or others if D/C'd. In his currently cognitively intact state he is able to rationally describe how he would tolerate a wide variety of outcomes if D/C'd from returning home & being a care giver to his child to returning to jail. Furthermore, he is able to appropriately and reasonably discuss his response if he is confronted c a prolonged period of incarceration. Prior to releasing Mr. Kalman I recommend that the tx team contact his gf to assure that she

Note: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

CVH-136
Rev. 2/99
CONNECTICUT VALLEY HOSPITAL
PROGRESS NOTES
General Psychiatry Division
Addiction Services Division
Whiting Forensic Division

DOB: 7/18/7_   DOA: 10/13/00
09_-74-79_2
CIVIL  _____ #1

Name _____  MPI# _____

| Disc | Date | Time | Identify Discipline (i.e. Phy. Nursing, SW, Rehab, Psychology, etc) |
|------|------|------|------|
| MD | 11/9/00 | 1:10p | CFP (cont)<br>are as follows:<br>1) Consider antabuse if this def is to be released to the community<br>2) Consider at least weekly ACT team visits to his home to assess his home situation, his ability to tolerate a caregiving role, and check his weekly med box<br>3) Random Urine toxicology screens to be performed by the community treaters a minimum frequency #/ determined by joint agreement between inpt & outpt treaters<br><br>Should med non-compliance or substance abuse occur in the community, at a minimum DCF should be contacted to assess whether the child is being properly cared for. _____ |
| NSG | 11/13/00 | 2pm | Pt has refused a _____ shot we offered _____ |
| NSG | 11/14/00 | 1:30a 11-7 Wkly | Pt appears to sleep well @ night. He awakes in A.M. 5 difficulty and is cooperative to routine. Pt offers no complaints or concerns. —— K. Sherrill, LPTS |
| Social work | 11/4/00 | 9:20 | Discharge Plan: On 11/9/00 Janet Olson (203-483-2630) _____ from Harbor Health Service (Ford _____ _____ _____ area) came and met c the treatment team. Mr _____ case was discussed. She reviewed the client _____ |

Note: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required... These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains...

CVH-136
Rev. 2/99
General Psychiatry Division
Addiction Services Division
Whiting Forensic Division

CONNECTICUT VALLEY HOSPITAL
PROGRESS NOTES

Case 3:03-cv-00671-DJS    Document 46-2    Filed 01/08/2004    Page 19 of 20

DOB: 7/18/7?    DOA: 10/13/00
C94-74-7?42
CIVIL ?ALE ADM #1

Name _____    MPI# _____

| Disc | Date | Time | Identify Discipline (i.e. Phy. Nursing, SW, Rehab, Psychology, etc) |
|------|------|------|--------------------------------------------------------------------|
| Nsg | 11/15/00 | cont | appointment @ Norwalk Hospital. Pt's mood was bright and he demonstrated a good understanding of medication regimen & D/C plan. M. Talbot, RN |
| U.D. | 11/15/00 | 12:30 pm | Patient was given discharge instructions regarding medications - dosage and frequency, along with next appointment with LMHA for Friday 11/17/00 @ 9:30 Am c̄ consular Karen Zeigler. Patient was able to reiterate the instructions as well as the directions back to this writer. afterwhich the |

Note: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be ?on?tituted ?o anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

<u>CERTIFICATION</u>

I hereby certify that a copy of the forgoing <u>Declaration in Support of Plaintiff's Motion</u>, was mailed in accordance with Rule 5 (b) of the Federal Rules of Civil Procedure on this 4th, day of October 2003 to:

Richard J. Lynch
Assistant Attorney General

Henry A. Salton
Assistant Attorney General

Kerry Anne Colson
Assistant Attorney General

55 Elm Street, P. O. Box 120
Hartford, CT 06141 – 0120

_____
Robert Kalman, Pro se,