**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

2004 JAN -8 P 2:30

US DISTRICT COURT

| | | |
|---|---|---|
| ROBERT KALMAN, | : | PRISONER |
| *Pro Se, Plaintiff,* | | |
| V. | : | Civil Action No. 3:03CV 671 |
| | | (DJS) (TPS) |
| ROBERT BERGER, et al., | : | |
| *Defendants,* | | *January 4, 2003* |

<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION</u>

STATEMENT OF THE CASE

This action was brought to this Honorable Court as a Declaratory Judgement filed under the American with Disabilities Act, Title II, 28 C.F.R., Sec., 35.172, the Federal Declaratory Judgements Act, 28 U.S.C., Sec., 2201, and pursuant the Civil Rights Act, 42 U.S.C., Sec., 1983.

BACKGROUND AND STATEMENT OF THE FACTS

On or about October 30, 2001, following a trial before a jury of six, the plaintiff was acquitted by reason of mental disease or defect of the charges of Illegal Possession of an Explosive Device pursuant to Conn. Gen. Stat. Sec., 29-348, Failure to Appear in the First Degree pursuant to Conn. Gen. Stat. Sec., 53a-172 and Risk of Injury (two counts) pursuant to Conn. Gen. Stat. Sec., 53-21(a) (1). The plaintiff was acquitted pursuant to Conn. Gen. Stat. Sec., 53a-13, by a jury and not convicted of the underlining offense. The Superior Court expressly concluded at the commitment hearing pursuant to Conn. Gen. Stat. sec., 17a-582, that there was insufficient evidence that plaintiff was "so …violent **as to require commitment under conditions of maximum security**…" The Honorable Lubbie Harper, Jr., 9/26/02 at 52-53.   Robert B. Berger, John Ryan, Janet Williams, Sylvia Cancela and Susan Blair, on January 10, 2003, held an Initial

1

Commitment Hearing, where two medical experts testified under <u>Oath</u> and concluded that plaintiff is not violent and he could be placed productively and appropriately in a less restrictive and more integrated setting in a non-maximum-security setting. On February 21, 2003, defendants issued a <u>Memorandum Of Decision,</u> ordering the plaintiff confined pursuant to Conn. Gen. Stat. Sec., 17a-599 in maximum-security. The <u>Memorandum Of Decision</u> issued by defendants on February 21, 2003, states that Robert Kalman **"is so violent that he requires confinement within a maximum-security setting."** The finding and order was clearly erroneous in view of the reliable, probative and substantive evidence on the record, and thereby depriving the plaintiff of the due process of law.

Plaintiff is denied the benefits of services, activities, opportunities, advantages, and rights enjoyed by others in the least restrictive setting. The extent to which the defendants have construed **"so violent as to require confinement under conditions of maximum security"** to include the plaintiff within the class of individuals to which it applies, violates Amendment Fourteenth of the United States Constitution. The complaint also states that defendants violated plaintiff's rights under 42 U.S.C., Sec., 12101(a),(2),(5), Title II, of the ADA. Moreover the complaint states that plaintiff "is deprived of participation and denied the benefits of services, programs, or activities provided in the most integrated, and least restrictive setting. The plaintiff is also a member of a class pursuant to the **<u>William Roe, et al., v. Michael Hogan, et al.,</u>** <u>AGREEMENT OF SETTLEMENT</u>, **Civil No. H89-570 (PCD),** and he is denied rights, privileges advantages and opportunities enjoyed by other members of the class based on a finding not supported by the evidence that he is so violent that he so requires the confinement under the most restrictive setting in maximum-security."

## INTRODUCTION

On October 28, 2003, defendants submitted their <u>Answer</u> to the Amended Complaint. Pro se plaintiff moved the case forward on October 29, 2003, by moving for Summary Judgement. On the 21st, day of November 03, Assistant Attorney General, Kerry Anne Colson, submitted an appearance next to A.G., Lynch and Salton than moved for an extension of time based on discovery, the plaintiff moved in opposition and objected on 11/29/03. On 11/24/03, defendants' moved to stay discovery and plaintiff moved for an enlargement of time to respond to defendants motion. Defendants submitted a response and Counsel for the defendants asserts before the Court that ***"Contrary to the plaintiff assertion, there is a law library at Whiting, which the plaintiff has access to."*** The plaintiff shared the defendants' assertion with others similarly situated. The plaintiff is hereby respectfully submitting this memorandum of law in support of his motion and in response to defendant's assertions. This introduction is continued and further incorporated in the plaintiff's arguments in detail.

### DECLARATION OF MARTIN F. DICKINSON

There is no Law Library at the Institute, the maximum-security service of Connecticut valley Hospital. (Mr. Dickinson, Declaration-P.2) The Institute has a Patient Library downstairs in the basement but not a Law Library. (Mr. Dickinson Declaration-P.3) The attached <u>Federal Report</u> mirrors the ineffectiveness of the advocate services at the Institute. It also reflects the cruel reality of the treatment at the Institute. (Mr. Dickinson, Declaration-P.5) We could use a Law Library. In fact the State should provide us with an advocacy Program that is effective and interested in advocating for our rights. (Mr. Dickinson, Declaration-P)

## DECLARATION OF ANTHONY DYOUS

I spent approximately nine years at the Institute and I was never told that there is a Law Library at the Institute because there is no Law Library at the Whiting Forensic service of Connecticut Valley Hospital. I read the Defendant's Response in the above captioned matter that is dated December 18th, 2003, and attached to this declaration as Exhibit A. (Mr. Dyous, Declaration-P. 2) Contrary to the defendants' assertion that **"there is a law library at Whiting, which the plaintiff has access to."** I have to say that the truth is that the defendants and the attorney general are misleading the Court. (Mr. Dyous, Declaration-P.3) Pertaining to the second statement of fact in defendants' motion. **"If the library at Whiting does not have the information sought by the plaintiff, personnel at Whiting will contact the Middletown Superior Court Law Library, which will provide copies of the requested information generally within 24 hours of receipt of such a request."** The truth is that I was never informed of this special service in all the years I've been here. (Dyous, Declaration-P5) It was for the first time when I read the defendants' motion that **"personnel will"** do anything for a resident. The fact is that for years this Institution and many employees were engaging in threatening and intimidating tactics when a resident had the courage to exercise his Constitutional rights to file a civil action. (Dyous, Declaration-P6)  I hope that the defendants and the attorney General will make their statement become true and they will provide us with a Law Library sometime in the near future. (Dyous, Declaration-P11) There is the Connecticut Legal Rights Project that is established pursuant to Doe v. Hogan. The C.L.R.P. is under contract from the DMHAS and therefore is not willing to

provide services to some residents. Also the Doe v. Hogan allows the CLRP selective in who they will represent. (Dyous, Declaration-P12)


## DECLARATION OF BENJAMIN NASH

I have been here for 18-years. (Nash, Declaration-P1, in part.) There is no Law Library at the Institute, the maximum-security service of Connecticut Valley Hospital. I read the Defendants' Response in the above captioned matter dated December 18th, 2003 attached to this declaration as exhibit A. (Nash, Declaration-P2) It would be proper if the defendants' and the Attorney General would provide us with a independent Advocacy Program that is interested in providing us with representation and services. We could also use a Law Library. (Nash, Declaration-P6)


## DECLARATION OF RICARDO PAGAN

I am a person who was subjected to abuse as a resident of the Institute as described attached in Exhibit B. I am one of the patients in this report. (Pagan, Declaration-P5) The Connecticut Legal Rights Project and the DMHAS-Grievance and advocacy Service is not willing to represent our interest because they are paid and regulated by the State of Connecticut. (Pagan, Declaration-P6) It would be proper if the defendants' and the Attorney General would provide us with an independent Advocacy Program that is interested in providing us with representation and services. The Public Defenders Office will not represent us in civil litigation matters. We could also use a Law Library. (Pagan, Declaration-P7)

ARGUMENT

**POINT I**

## THERE IS NO LAW LIBRARY AT THE INSTITUTE

The defendant's specifically state that ***"Contrary to the plaintiff assertion, there is a law library at Whiting, which the plaintiff has access to."*** The fact is that there is a patient library at Whiting that contains a limited amount of legal materials. The library at Whiting is inadequate and would not pass a test determining if it could be classified as a prisoners law library. The right to access to a law library was first enunciated by the Supreme Court in <u>Bounds v. Smith</u>, 430 U.S. 817, 97 S. Ct. 1491 (1977). The Court stated that:

> We hold, therefore, that the fundamental constitutional right of access to the courts requares prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with **adequate law libraries or with assistance from personal trained in the law.**

In determining the existence of a Law Library at the Institute the proper test that should be applied should relate to the Due Process Clause, the Equal Protection Clause, the First Amendment, and the Privileges and Immunities Clause of Article IV of the Constitution. The Court in <u>Craig v. Hocker</u>, 405 F. Supp. 656 (D. Nev. 1975), laid down the following requirements for an adequate law library in a state prison:

1. Decisions of the United States Supreme Court
2. Complete "Federal reporter" system.
3. Complete regional reporter system for the region where the prison is.
4. "Shephard's Citations" for the above publications.
5. Statutes for the state where the prison is located.
6. State digest.
7. Modern "Federal Practice Digest".
8. One general reference work on criminal law.

The Supreme Court has stated, *"It is now established beyond doubt that prisoners have a constitutional right of access to the courts."* Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491 (1977). See, Mauray v. Giarratano, 492 U.S. 1, 11 n. 6, 109 S.Ct. 2765 (1989); Peterkin v. Jeffes, 855 F. 2d. 1021, 1036 n. 18 (3d Cir. 1988); Simons v. Dickhaut, 804 F. 2d 182, 183 (1 st Cir. 1986); *"Litigation undertaken in good faith by a prisoner motivated to bring about social change and protect constitutional rights in the prison enjoys First Amendment protection."* Adams v. James, 784 F.2d 1077, 1081-82 (11 th Cir. 1986). As many Court's put it, court access involves *"all the means a defendant or petitioner might require to get a fair hearing from the judiciary…"* Gilmor v. Lynch, 319 F. Supp. 105, 111 (N.D. Cal. 1970) **(emphases supplied), aff'd sub nom.** Younger v. Gilmore, 404 U.S. 15 (1971) **(per corium).**

It is clear from court decisions in this area that the prison bears the burden of showing adequate access to the courts. See, Novak v. Beto, 453 F. 2d 661 (5 th Cir. 1971) cert. Denied 409 U. S. 968 (1972); Cross v. Powers, 328 F. Supp. 899 (WD Wis. 1971)*(law student clinic for post conviction and legal services program for civil cases was not reasonable alternative because no help was provided in case alleging violations of constitutional rights)*.

Moreover, it is well established that *"providing prisoners with an adequate law library does not, per se, provide adequate access to the courts"* Battle v. Anderson, 614 F. 2d 251 (10 th Cir. 1980). In the present case should be noted that plaintiff is not an educated individual and that he has no high school education, English is a second language for the plaintiff. It should also be noted that plaintiff was not found quilty of the offense. In fact a jury acquitted him. It is well settled that: *"mere physical access to the*

*law library is useless to prisoners, who lack the knowledge to use it,*" <u>Glover v.</u>
<u>Johnson,</u> 478 F. Supp. 1075 (E.D. Mich. 1979). In the present case there is no law
library. Also see, <u>Rhodes v. Robinson,</u> 612 F. 2d 766 (3d Cir. 1979), PLM 285 (May
1980) stating that *"selective denial of photocopying privileges states a federal claim for
relief..."* The Whiting administration limits institution residents rights to use the copier
in the patient library. Connecticut State Law THE CONNECTICUT PATIENT BILL OF RIGHTS
provides that:

> "EVERY HOSPITAL FOR TREATMENT OF PERSONS WITH PSYCHIATRIC
> DISABILITIES SHALL FURNISH WRITING MATERIALS AND POSTAGE
> TO ANY PATIENT DESIRING THEM." GEN. STAT. SEC., 17A-546(B).

Federal Regulations closely track the law as set fourth by the courts in this area:
see, <u>Bounds v. Smith,</u> 430 U.S. 817 (1977); <u>Owens-El v. Robinson,</u> 472 F. Supp 1368
(WD. Pa. 1978); <u>Inmates of Allegheny County Jail v. Pierce,</u> 612 F. 2d 754 (3rd Cir.
1979). Even if inmate cannot show denial of access to library he may still show *"actual
injury"* to court access. See, <u>Sowell v. Vose,</u> 941 F. 2d 1476 (2 nd Cir. 1991). Recently,
court's held that no showing of prejudice is required when the prisoner claims a
substantial denial or interference with access to an <u>adequate Law Library</u> or to Legal
Assistance. See, <u>Sands v. Lewis,</u> 886 F. 2d 1166, 1171 (9 th Cir. 1989); <u>Ruak v. Soland,</u>
928 F.2d 947, 950 (10 th Cir. 1991). It is recognized that *"directly involving prisoners
access to legal knowledge, an actual injury necessarily occurs by virtue of [the] failure
to provide the level of assistance required under <u>Bounds</u>"* <u>Petercin v. Jeffes,</u> 855 F. 2d
1021, 1041 (2d Cir. 1988); accord, <u>Griffin v. Coughlin,</u> 734 F. Supp. 1006, 1021-22
(N.D.N.Y. 1990).

The plaintiff in the present case is an individual found not quilty by reason of mental disease or defect, and is confined to a maximum-security facility pursuant an order entered by the defendants. The defendants claim that plaintiff has a Law Library at the Institute. The Court's had held that, <u>Bounds</u> obligation is not satisfied by provision of counsel unless they are available **"for all relevant proceedings"** <u>Peterkin v. Jeffes</u>, 855 F. 2d 1021, 1046 (3d Cir. 1988); See also <u>Carter v. Mandel</u>, 573 F. 2d 172, 173 (4 th Cir. 1978) holding that **"assistance program must address civil rights claims to be adequate."**

Moreover, a number of court's had stated that the existence of Prisoners' Legal Services Program did not substitute for Law Library access because it was not shown to be ***"available for all relevant proceedings"*** <u>Griffin v. Coughlin,</u> 743 F. Supp. 1006, 1024 (N.D.N.Y. 1990). A law library must be <u>*"adequate"*</u> <u>Bounds v. Smith</u>, 430 U.S. at 828, and ***"libraries <u>without federal cases</u> or with many <u>missing volume</u> were [inadequate]"*** <u>Ramos v. Lamm,</u> 639 F. 2d 559, 584 (10 th Cir. 1980), cert. Denied, 450 U.S. (1981); <u>Cruz v. Hauck</u>, 627 F. 2d at 720 ***"Federal Supplement from 1960 or so on should probably be available."*** See also, <u>Cornett v. Donovan</u>, 51 F. 3d 894 (9 th Cir. 1995), **cert. Denied, 116 S. Ct. -, 1996 WL 360473 (1996)**, holding that ***"right to law library or legal assistance guarantied during pleading stages of habeas corpus or civil rights action…"***

The defendants' assertion that there is a law library at the Institute is frivolous and at the same time counsel for the defendants minimizes the facts. The declarations submitted with this memorandum reveal that there is no <u>"law library"</u> at the Institute.

## POINT II

## <u>DEFENDANTS ARE IN POSESSIO OF THE FACTS, AS THEY ORDERED THE PLAINTIFF CONFINED UNDER CONDITIONS OF MAXIMUM-SECURITY</u>

The following is a brief summary of the factual basis that the plaintiff relies upon for this section of his argument: Plaintiff filed this action on April 11, 2003 and service was completed on May 9th, 03. Assistant Attorney General, Richard J. Lynch submitted appearance on behalf of the Defendants on June 5, 2003, and moved for enlargements of time. On August 25th, 2003, plaintiff moved to amend complaint and the defendants moved on 9/4/03 for an Objection that was denied. Defendant's moved for additional enlargements of time and plaintiff moved the case forward by moving for discovery on September 2, 2003. Defendants Janet Williams and Susan Blair each moved for an additional enlargement of time on October 3, 2003, that was granted by this Court on October 28th, 2003. Defendant Robert B. Berger, John Ryan and Sylvia Cancela did not move for an enlargement of time. On October 28th, 2003, the defendants submitted their Answer to the Amended Complaint and the pro se, plaintiff moved the case forward on October 29th, 2003, by moving for Summary Judgement. In October 2003, Assistant Attorney General Kerry Anne Colson was not a Counsel appearing on record on behalf of the defendants. The LOCAL RULE OF CIVIL PROCEDURE of the Court provides that:

### RULE 7
### FILING AND SERVICE OF PLEADINGS AND
### OTHER PAPERS

(B)    APPEARANCE.

COUNSEL ENTERING A CASE AFTER THE FILING OF THE COMPLAINT, **WHETHER ON BEHALF OF THE PLAINTIFF OR THE DEFENDANT,** SHALL FILE WITH THE CLERK AND SERVE ON ALL PARTIES OR THEIR COUNSEL A NOTICE OF APPEARANCE. THE APPEARANCE SHALL INCLUDE COUNSEL'S NAME, ADDRESS, ZIP CODE, FEDERAL BAR NUMBER, FAX NUMBER AND E-MAIL ADDRESS, IF AVAILABLE.
(AMENDED JULY 28, 2000, EFFECTIVE SEPTEMBER 1, 2000)

Defendants' Motion To Stay Discovery states

that: "The defendants, on behalf of the plaintiff, have taken the liberty of preparing a draft Rule 26(f) Report. (See Attached Affidavit.) Such report was mailed to the plaintiff for review on or about November 6, 2003. (See Attached Affidavit.) To date, the plaintiff, however, has not communicated with the defendants regarding the draft Rule 26(f) Report and proposed discovery plan. (See Attached Affidavit.)..."

As reflected above pro se, plaintiff moved for discovery on September 2, 2003 and on October 3, 2003, defendant Janet Williams and Susan Blair each moved for 30-day enlargement of time that was granted on October 28, 2003.


## SUMMARY JUDGEMENT IS A PROCEDURE DESIGNED TO DISPOSE OF CASES WITHOUT TRIAL.

In most pro se prisoner cases, the defendants will move for summary judgement and this is the stage at which most pro se litigants lose their case. Summary judgement is to be granted if the record before the court shows *"that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law."* Rule 56( c), Fed.R.Civ.P. See, Plaisance v. Phelps, 845 F.2d 107, 108 (5 th Cir. 1988), *(If there is no genuine factual issue, summary judgement does not violate the right to a jury trial, since the purpose of trials is only to decide factual issues).* In determining whether is a genuine issue of material fact, the court must view all facts in favor of the moving party Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986); Hathaway v. Coughlin, 841 F.2d 48, 50 (2d Cir. 1988).

On or about November 11th, 2003, pro se, plaintiff received a letter from Assistant Attorney General, Kerry Anne Colson, attached as Exhibit A, to plaintiff's Declaration submitted with this Memorandum. (Reproduced as Exhibit A, attached to the Defendant's Motion To Stay Discovery, dated 11/24/03).

On November 11th, 2003, Assistant Attorney General, Kerry Anne Colson was not a Counsel appearing on record on behalf of the Defendants' in this action pending before the Court. While Exhibit A, is dated November 6, 2003, the fact is that Assistant Attorney General, Kerry Anne Colson's appearance is **"Dated at Hartford, Connecticut, this 21st day of November, 2003."** See APPEARANCE attached as Exhibit B, to plaintiff's Declaration. The Second Circuit has recognized that the Court cannot consider hearsay statements or other matters that would not be admissible at trial. Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986).

In Beyah v. Coughlin, the Honorable Court held that **"attorney's hearsay affidavit was insufficient"** See also, Weber v. Dell, 804 F. 2d 796,8o2 (2d Cir. 1986).

Also in Beyah v. Coughlin, 789 F. 2d at 989, the Second Circuit held that **"unverified letters could not support summary judgement"**. Several courts have made similar decisions on hearsay affidavits and statements made by counsel. The Third Circuit directly states in Kauffman v. Johnson, 454 F.2d 264, 266 (3d Cir. 1972) that **"statements by counsel in court and in briefs were not part of the summary judgement record."** In the present case the evidence is clear that the defendants counsel

appears on the record on November 21 st, 2003. Plaintiff moved for Summery Judgement

on October 29 th, 2003. Counsel for the defendants' in the motion to stay discovery states

that:    "The defendants, on behalf of the plaintiff, have taken the liberty of preparing a
draft Rule 26(f) report. (See Attached Affidavit.) Such report was mailed to the
plaintiff for review <u>on or about</u> November 6, 2003. (See Attached Affidavit.)"

Counsel for the defendants is misleading and fails to cite the fact that counsel

entered her appearance only on November 21st, 2003. Counsel fails to cite that she

appeared after the Court entered an <u>Order</u> on the 12th day of November. Counsel for the

defendant's continuously refers to her <u>Affidavit</u> in support. The motion states that the

report was mailed **"on or about November 6, 2003."** The Affidavit paragraph four (4)

states that **"On November 6, 2003, I wrote to the plaintiff... and mailed with said

letter on November 6, 2003 for plaintiff's review and comment."**

Moreover, the defendants' <u>Motion for Extension of Time to Respond to Plaintiff's</u>

<u>Motions for Summary Judgement</u> dated November 21, 2003, also defers from paragraph

4 of the Affidavit. At the same time Counsel fails to state in the Affidavit, that she

entered appearance on November 21, 2003.

It is noteworthy that on October 3, 2003,

"...the defendants, Janet Williams and Susan Blair, each move for an
extension of time to respond to the plaintiff's interrogatories and
request for production of documents served on the undersigned on
September 7, 2003. The defendants need additional time in order to
review the breadth of documents involved in this case and to meet
with the state employees involved to properly respond to the
discovery request.
The undersigned hereby respectfully request an extension of
time of 30 days from the court's ruling on the motion for extension
of time to respond to discovery."

On 10/28/03, the court granted the motion submitted by defendant, Janet Williams and

Susan Blair. Defendant Robert Berger, John Ryan, and Sylvia Cancela failed to respond.

## FACTUAL DISPUTES THAT ARE IRELEVENT OR UNECESARY WILL NOT BE COUNTED AND THE EVIDENCE

1. At the hearing held before the defendants on January 10th, 2003, two medical experts from the Institute testified under <u>Oath</u> on the plaintiff's mental condition. The testimony provided by Dr. Alexandre Carre, M.D., and provided by Dr. Sabita Rathi, M.D., *is the salient flavor of this case*. It is noteworthy that, a report written by Dr. Peter Zeman, M.D., (SENIOR CONSULTANT, THE INSTITUTE OF LIVING) is part of the evidence. Dr. Alexandre Carre' in his testimony provided that there was no doubt in his mined that plaintiff could be placed in a less restrictive setting. In fact Dr. Carre' M.D., states that **"Well, I don't think Whiting is the only place that could take care of Mr. Kalman's needs."** Transcript 1/10/03, p. 22 at 1 to 3, Exhibit A, Summary Judgement. (Hereinafter TR., 1/10/03- Exhibit A-S).

2. Defendant Robert B. Berger, The Chairman of the P.S.R.B., while questioning Dr. Carre' and quoting the report of Dr. Zeman. Chairman Berger next asked, **"At the present time do you feel that Mr. Kalman needs to be at Whiting considering the statement of Dr. Zeman?"** TR., 1/10/03-Exhibit A-S, p.23 at 5 to 13.

3. The expert from the Institute, Dr. Alexandre J.R. Carre' immediately turned and stated under oath, "I believe that Mr. Kalman needs to be an inpatient. Does he need the **maximum security** at Whiting, **I doubt it....**" TR-1/10/03-Exhibit A-S, p.24 at 2 to 8.

4. In fact the expert evidence reveals that plaintiff's mental status is intact. Plaintiff has been compliant with his treatment plan, he was non-violent; he did not engage in any threatening behaviors; he had no suicidal ideation's; there was no evidence of auditory or visual hallucinations or other psychotic symptoms; his speech was normal

in volume, and prosody. The plaintiff made good eye contact, mood was intact there was no abnormal mood or movement noted; his affect was full and goal-directed.

5. Dr. Sabita Rathi, M.D., stated that she had no doubt, **"Yes, he would be good candidate for Dutcher, correct."** TR. 1/10/03, Exhibit A-S, p. 25 at 21 to 22.

6. In addition, to all the above facts **it is also a fact and is part of the record** before the Honorable Court in this case that plaintiff is providing his PSYCHIATRIC MEDICAL MENTAL HEALTH RECORDS for the Court and for the Defendants. The Honorable Thomas P. Smith, U.S. Judge entered an ORDER directing the Defendants on the 12th, day of November to respond to the plaintiff's MOTION'S TO SEAL CERTAIN EXHIBITS dated October 7th, 2003. Attached to Plaintiff's Declaration as Exhibit C, is the Order entered by the Honorable Court dated November 12th, 2003, Pursuant to said Court ORDER the defendants submitted a response on November 21, 2003. On 11/29/03, plaintiff submitted an answer in compliance to defendant's **request** for a **"full and unfettered use of"** the medical records in preparation of their defense.

The defendants' are in possession of the ***material facts*** and the defendants' are ***personally involved*** in the violation of the plaintiff's civil rights and rights guaranteed by the U.S. Constitution. Defendants' ordered the plaintiff confined under the most restrictive setting pursuant to Conn. Gen. Stat. Sec., 17a-599 under conditions of maximum-security. In the present case ***"personal involvement"*** is shown the Honorable Court could render a verdict and find liability. In Byrd v. Brishke et al., 466 F. 2d 6 (7th Cir. 1972), page 11, the Court noted, "We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his

office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." (Emphases added).

Likewise the Second Circuit recognized in <u>Meriwether v. Coughlin,</u> 879, F.2d 1037, 1048 (2d Cir. 1989)**(damages awarded against Commissioner who was aware of the risk of beatings but did noting);** <u>Bolin v. Black,</u> 875 F. 2d at 1347-48 **(citing <u>Meriwether v. Coughlin</u> above.);** see, <u>Inmates of Attica Correctional Facilities v. Rockefeller,</u> 453 F2d (2d Cir. 1971); <u>Fiacco v. Rensselaer, N.Y.,</u> 783 F.2d at 329; <u>Taylor v. Clemont,</u> 433 F. Supp 585 (D.C.N.Y. 1977)**(Superintendent was responsible for any unconstitutional deprivation which the inmates suffered);** <u>Young v. Harris,</u> 509 F. Supp. 1111 (S.D.N.Y. 1981)**(Commissioner of State Department of Correctional Services and prison officials held liable);** <u>Bishop v. Stoneham,</u> 508 F2d 1224, 1226 (2nd Cir. 1974).

In this action pending before the bench of the Court the record is clear and plaintiff is entitled to judgement as a matter of law. A **"material"** fact is one that **"might effect the outcome of a suit under the governing law…. Factual disputes that are irrelevant or unnecessary will not be counted"** <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. at 248; <u>Murphy v. Dowd,</u> 757 F. Supp. 1019, 1022(E.D.Mo. 1990)<u>; Petterson v. Coughlin,</u> 905 F. 2d 564, 570-71 (2d Cir. 1990)**(affirming summary judgement on liability but reversing summary judgement on damages because of factual dispute over the amount of damages.);** <u>Richardson v. Coughlin,</u> 763 F. Supp. 1228 (S.D.N.Y. 1991)**(Granting summary judgement to plaintiff on one issue and to the defendants on one issue, and denying it on a third issue);** <u>Scottv. Coughlin,</u> 727 F. Supp. 860, 810 (W.D.N.Y. 1990); <u>e.g., Bellany v. McMickens,</u> 692 F. Supp. 205, 210-12 (S.D.N.Y.

1988).   In the present case the evidence is in possession of the defendants and therefore their argument based on discovery underscores the generally applicable Constitutional Principals. Moreover, the plaintiff is *submitting his psychiatric/psychological mental health records* to both the Court and to the defendants'. The defendants are directly involved and they ordered the plaintiff confined under conditions of maximum-security.

The plaintiff has a liberty interest to be free from maximum-security confinement pursuant to state statute and pursuant to both Connecticut and United States Constitutions. The Connecticut and the United States Constitutions mandate that a person **shall not be deprived of life, liberty or property without due process of law**. U.S. Const. Amend. XIV, Sec., 1; Conn. Const. Art. 1, Sec., 8. **"It is clear that `commitment for any purpose constitutes a significant deprivation of liberty that requares due process protection.'** Addington v. Texas, 441 U.S. 418, 425, 99 S. Ct. 1804, 1810, 60 L. Ed.2d 323, 332 (1979). Due Process requares the STATE **to establish, by clear and convincing evidence, that the individual is both mentally ill and dangerous to justify involuntary civil commitment.** Id., 426-27. (Addington standard). The State must have **"a constitutionally adequate purpose for the confinement."** O'Connor v. Donaldson, 422 U.S. 563, 574, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). It is recognized, however, that acquittees are **"a special class that should be treated differently from other candidates for commitment"** because the insanity acquittal Jones v. United States, the Supreme Court concluded that a verdict of not guilty by reason of insanity establishes two facts: **"(i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness."** Id., 363. From those facts, a State is permitted to infer both dangerousness and mental illness in statutes concerning

the commitment of insanity acquittees, thus permitting departure from the Addington standard in civil commitment. Jones, supra, 346-67. But, as with a civil committee, an acquittee **"may be held as long as he is both mentally ill and dangerous, but no longer."** Id., citing O'Connor v. Donaldson, supra, 5775. **(Holding Due Process violation for State to civilly confine a harmless mentally ill person.)** If an insanity acquittee is not **"mentally ill at the time of the trial court's hearing[,]…the basis for holding him in a psychiatric facility as an insanity acquittee has disappeared, and the State is no longer entitled to hold him on that basis."** Foucha v. Louisiana, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992).

The Supreme Court of the State of Connecticut recognized **"that the loss of liberty is all the more profound when the institution to which the patient has been confined is a maximum security facility such as Whiting."** Connelly v. Comm'r of Correction, 258 Conn. 394, 405-406, 780 A.2d 903 (2001). The PSRB statutory scheme thus consists of a graduate scheme based upon the extent of the acquittee's psychiatric disability and dangerousness where the primary concern is the protection of society. Thus the statutory language of Conn. Gen. Stat. Sec., 17a-599, particularly when considered in the context of the statutory framework demonstrates that an order of maximum-security confinement must be based on a finding that acquittee is **"[so] violent"** and that confinement under maximum security conditions is for the safety of the staff, other patients and the acquittee." See, Dyous, v. Psychiatric Security Review Board, 264 Conn. (2003), at 777; see also Regs., Conn. State Agencies Sec., 17a-581-56.

The evidence on the record unequivocally demonstrates that the plaintiff is not violent and is not mentally ill to an extent to justify his confinement under conditions of maximum-security. According to all the evidence presented before the bench in this Honorable Court, and as acknowledged by Dr. Carre' and Dr. Rathi, the plaintiff has not injured or threatened a single individual with physical harm while at Whiting. According to Dr. Alexandre Carre' M.D., **"Well, I don't think Whiting is the only place that could take care of Mr. Kalman's needs."**

There is no <u>right</u> for an Administrative Appeal under the U.A.P.A., in a P.S.R.B. order entered pursuant Conn. Gen. Stat. Sec., 17a - 599 (confinement under conditions of maximum-security).

**Conn. Gen. Stat. Sec., 17a –599, (Formerly Sec. 17a – 257t)**
<u>CONFINEMENT UNDER CONDITIONS OF MAXIMUM SECURITY</u>

AT ANY TIME THE COURT OR THE **BOARD** DETERMINES THAT THE ACQUITTEE IS A PERSON WHO SHOULD BE CONFINED, IT **SHALL MAKE A FURTHER DETERMINATION** OF WHETHER THE ACQUITTEE IS **[SO]** VIOLENT AS TO **REQUIRE CONFINEMENT UNDER CONDITIONS OF MAXIMUM SECURITY.** ANY ACQUITTEE FOUND SO VIOLENT AS TO REQUIRE CONFINEMENT UNDER CONDITIONS OF MAXIMUM SECURITY SHALL NOT BE CONFINED IN ANY HOSPITAL FOR PSYCHIATRIC DISABILITIES OR PLACED WITH THE COMMISSIONER OF MENTAL RETARDATION UNLESS SUCH HOSPITAL OR SAID COMMISSIONER HAS THE TRAINED AND EQUIPPED STAFF, FACILITIES OR SECURITY TO ACCOMMODATE SUCH ACQUITTEE.

The plaintiff alleges in his complaint that all the medical professionals who testified under <u>Oath</u> at the hearing on January 10th, 2003, Dr. Carre' and Dr. Rathi, testified **inter alia,** that plaintiff is not violent and he can be placed productively in a less restrictive setting, see paragraphs 2, 3, 4, 5, 6, 7, and 8 of the complaint. The plaintiff asserts before the Honorable Court that due to the defendants order he is in fact deprived of services equally to civilly committed patients as well as other patients committed to the Connecticut Psychiatric Security Review Board. Plaintiff is deprived of services

consistent with his individual clinical status by having been wrongfully classified by defendants to be **"[so] violent"** and by having been ordered confined in a maximum-security facility in a restricted classification setting that deprive plaintiff increasing levels of freedom and responsibilities.

## AS A MATTER OF LAW, THE CONTINUED DEPRIVATION CONSTITUTES IRREPARABLE HARM.

Plaintiff is deprived of services equally to civilly committed patients as well as other patients committed to the jurisdiction of the defendants. Plaintiff is deprived of services constant with his individual clinical status by having been wrongfully classified by defendants to be "so violent" and having been ordered confined in a maximum-security setting in a restricted classification setting that deprive plaintiff increasing levels of freedom and responsibilities. The plaintiff is a member of the Class pursuant to <u>William Roe, et al., v. Michael Hogan, et al.,</u> Civil No. H899-570 (PCD), and he is denied rights, privileges advantages and opportunities enjoyed by other members of the class based on a finding not supported by evidence. See, <u>Sharif by Salahuddin v. New York State Education Department,</u> 709 F.Supp. 345, 359 (S.D.N.Y. 1989)**(non prisoner, and cases cited)**; <u>e.g., Stringer-El v. Nix,</u> 945 F.2d 1015 (8 th Cir. 1991)**(release from unlawful segregation)**; <u>White v. Napoleon,</u> 897 F.2d 103 (3d Cir. 1990); <u>Laaman v. Helgemoe,</u> 437 F. Supp. 269 (D. N. H. 1977). Federal courts confirmed that individuals with disabilities have a guaranteed right to equal access to services. Section 504 of the REHABILITATION ACT, of 1973, 29 U.S.C., Sec., 794, as amended, guarantees persons with disabilities equal access to federally funded programs. TITLE II of the AMERICAN WITH DISABILITIES ACT, (ADA), 42 U.S.C. 12141 <u>et seg.,</u> now extends these same rights to inmates in state and local facilities which do not receive federal funding. TITLE II of

the ADA, the U.S. Department of Justice regulation to TITLE II, 28 C.F.R., PART 35, and the Analysis thereto, 56 Fed. Reg. 35694 (July 1991) works to clarify the requirements of section 504, and extend them to institutions, which do not receive federal financial assistance. In the present case before the bench the plaintiff is an acquittee and a member of a protected class pursuant to an AGREEMENT that was approved before this Honorable Court in William Roe, et al., v. Michael Hogan, et al., H899-570 (PCD), (12/5/90), (D.Conn.).

In addition to the entire above stated facts the plaintiff is confined at the Whiting Forensic Institute the maximum-security division of Connecticut Valley Hospital that is an Institution operated by the Connecticut State Agency the Department of Mental Health and Addiction Services. Connecticut Valley Hospital and the Institute both receive federal funds on behalf of patients pursuant to the SOCIAL SECURITY ACT, under TITLE XVI, XVII [42 U.S.C.A., Sections' 1381 et seg., 1385 et seg.], and under State plans approved under TITLE XIX [42 U.S.S.C.A. Sec., 1986 et seg.] and pursuant to the HEALTH INSURANCE PROGRAM FOR THE AGED & DISABLED PROGRAM.

The Second Circuit held that a showing that constitutional rights are violated is enough to meet the irreparable harm standard. See, Micthell v. Cuono, 748 F.2d 804, 860 (2d Cir. 1984); Campos v. Coughlin, 854 F. Supp 194,204 (S.D.N.Y. 1994); New York State NOW v. Terry, 704 F.Supp. 1247, 1262 (S. D.N.Y. 1989) aff'd as modified, 886 F.2d 1339 (2d Cir. 1989), cert. Denied, 495 U.S. 947 (1990) and cases cited); Also see, Elrod v. Gambel, 427 U.S. 347, 373, 96 S. Ct. 2673 (1976); Kaminsky v. Rosenblum, 737 F. Supp. 1309 (S.D.N.Y. 1990).

## THE RELIEF SOUGHT WILL SERVE THE PUBLIC INTEREST

In the present case the plaintiff is a Class member and the defendants are members of the Psychiatric Security Review Board an administrative body within the Department of Mental Health and Addiction Services of the State of Connecticut. The granting of relief will serve the public interest because it is always in the public interest for government officials to obey the Constitution and the law. **"Upholding constitutionally guaranteed rights is in the public interest."** ILQ Investments, Inc. v. City of Rochester, 816, F. Supp. 516, 527 (D. Min. 1993 *revived on other grounds,* 25 F. 3d 1413 (8 th Cir. 1994); se also Llewelyn v. Oakland County Prosecutor's Office, 402 F. Supp. 1379, 1393 (E.D. Mich. 1975) **("the Constitution is the ultimate expression of the public interest")**; Lyons v. Weinberger, 376 F. Supp. 248, 255 (S. D. N.Y. 1974) (*holding that a ministerial duty is one that is required by a specific statutory or regulatory direction, or one imposed by a* **"constitutional"** *mandate that has been* **"clearly established"** *by* **judicial decision)**; Chinchello, et. al . v. Fenton, et. al., 805 F.2d 126, 132-33 (3 rd Cir. 1986).

Plaintiff is deprived of his right to actively participate in the development of his treatment plan pursuant to the Code of Federal Regulations Sec. 482.13 (b) (1). His right to actively participate in the development of his treatment plan pursuant to Conn. Gen. Stat. Sec., 17a-542 has been violated. Furthermore, the defendant's actions demonstrate a significant deviation from DMHAS and FEDERAL HEALTHCARE FINANCE ADMINISTRATION policy. The DMHAS, CVH OPERATIONAL PROCEDURES MANUAL (12/2000), Sec., 1, Policy 1 (E) (3) states, CVH encourages patients to be active participants in their treatment planing process by working with his/her treatment providers throughout the hospitalization. The language of inclusion and participation is

echoed throughout the DMHAS OPERATION MANUAL and is clearly a pillar of Federal Policy. However, the plaintiff's exclusion and the willful deprivation of his right to equal opportunities to participation are evidenced in plaintiff's hospital medical records.

POINT III

THE PLAINTIFF SHOULD NOT BE REQUIRED TO POST SECURITY.

Usually a litigant who obtains interim injunctive relief is asked to post security. Rule 65(c), Fed. R. Civ. P. However, the plaintiff is an indigent prisoner and is unable to post security. The court has discretion to excuse an impoverished litigant from posting security. Orantes-Hernandez v. Smith, 541 F. Supp. 351, 385 n. 30 (C.D.Cal. 1982); J.L. v. Parham, 412 F. Supp. 112, 140 (D.Ga. 1976), rev, d on other grounds, 442 U.S. 584, 99 S.Ct. 2493 (1979).

CONCLUSION

Plaintiff has been confined for two years under the most restrictive conditions in maximum-security, a time period clearly in excess of constitutional limits under the governing laws, and ethical or professional standard of care. For all the forgoing reasons, the court should grant the motion in its entirety.

DATED: JANUARY 4, 2004

RESPECTFULLY SUBMITTED

THE PLAINTIFF
ROBERT KALMAN

By: _____
Robert Kalman, Pro se
Whiting Forensic Institute
P.O. Box 70 O'Brien Dr.
Middletown, CT 06457

23

## CERTIFICATE OF THE SERVICE

I hereby certify that a copy of the forgoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION, was mailed in accordance with Rule 5 (b) of the Federal Rules of Civil Procedure on this 4th, day of January 2004 to:

Richard J. Lynch
Assistant Attorney General

Henry A. Salton
Assistant Attorney General

Kerry Anne Colson
Assistant Attorney General

55 Elm Street, P. O. Box 120
Hartford, CT 06141 – 0120

Robert Kalman, Pro se,
Whiting Forensic Institute