UNITED STATES DISTRICT COURT    FILED
DISTRICT OF CONNECTICUT

| ROBERT KALMAN, | : | PRISONER |
| *Pro Se, Plaintiff,* | | 2004 JAN -8 P 2: 30 |
| V. | : | Civil Action No. 3: 03cv 671 |
| | | (DJS) (TPS) DISTRICT COURT |
| ROBERT BERGER, et al., | : | BRIDGEPORT CT |
| *Defendants,* | | December 25, 2003 |

## DECLARATION OF RICARDO PAGAN

RICARDO PAGAN declares under penalty of perjury:

1.  I am over eighteen years of age and believe in the obligation of an oath. The forgoing statement is based upon my personal knowledge and I make this declaration willingly and executed as my free and voluntary act. I am presently confined to the Whiting Forensic Institute the maximum-security service of Connecticut Valley Hospital (hereinafter Institute).

2.  There is no Law Library at the Institute, the maximum-security service of Connecticut Valley Hospital. I read the Defendants' Response in the above captioned matter dated December 18th, 2003 attached to this declaration as Exhibit A.

3.  The Institute has a Patient Library downstairs in the basement but not a Law Library.

4.  Attached to this declaration as Exhibit B, is a copy of a Federal Report describing events that had taken place at the Institute over the years.

5.  I am a person who was subjected to abuse as a resident of the Institute as described attached in Exhibit B. I am one of the patients in this report.

1

6.  The Connecticut Legal Rights Project and the DMHAS-Grievance and Advocacy Service is not willing to represent our interest because they are paid and regulated by the State of Connecticut.


7.  It would be proper if the defendants' and the Attorney General would provide us with a independent Advocacy Program that is interested in providing us with representation and services. The Public Defenders Office will not represent us in civil litigation matters. We could also use a Law Library.


Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

December 25, 2003

Ricardo Pagan
Whiting Forensic Institute
70 O'Brien Drive
Middletown, CT 06457
Tel: (860) 346 9408

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROY SASTROM & ROBERT KALMAN    :
    *Plaintiffs*                  PRISONER
                                      : CIVIL ACTION NO. 3:03 CV 671
                                        : (DJS)(TPS)

v.    :

ROBERT BERGER, JOHN RYAN,    :
JANET WILLIAMS, SYLVIA CANCELA, :
SUSAN BLAIR    :
    *Defendants*                   : December 18, 2003

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANTS'
## MOTION TO STAY DISCOVERY

The defendants, Robert Berger, John Ryan, Janet Williams, and Sylvia Cancela,

do not object to the plaintiff's Motion for Extension of Time to Respond to Defendant's

Motion to Stay Discovery. The defendants are filing this response to clarify the

plaintiff's representation in his motion for extension of time that he does not have access

to a law library at Whiting Forensic Institute ("Whiting"), a maximum-security mental

health facility operated by the Department of Mental Health and Addiction Service to

which the plaintiff is confined.

Contrary to the plaintiff assertion, there is a law library at Whiting,

which the plaintiff has access to. If the law library at Whiting does not have the

information sought by the plaintiff, personnel at Whiting will contact the Middletown

Superior Court Law Library, which will provide copies of the requested information

generally within 24 hours of receipt of such a request. A review of the plaintiff recently

filed "Objection to Defendants Motion for Extension of Time Until Discovery has been

Completed to Respond to Motions for Summary Judgment" indicates that the plaintiff

indeed has had access to the law library based on the plethora of legal authority cited in

his motion.

████████████
████ ███████ER
JOHN RYAN
JANET WILLIAMS
SYLVIA CANCELA
SUSAN BLAIR


RICHARD BLUMENTHAL
ATTORNEY GENERAL

Richard J. Lynch
Assistant Attorney General


BY: _____

Kerry A. Colson
Assistant Attorney General
Federal Bar No. 25241
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5210
Fax: (860) 808-5385
Kerry.Colson@po.state.ct.us

DEPARTMENT OF HEALTH & HUMAN SERVICES

CENTERS FOR MEDICARE
& MEDICAID SERVICES

Division of Medicaid and State Operations
Region 1
JFK Federal Building
Government Center
Boston, MA 02203

November 14, 2001

Garrell S. Mullaney, CEO
Connecticut Valley Hospital
Silver Street
PO Box 351
Middletown, CT 06457

Dear Mr. Mullaney:

Section 1865 of the Social Security Act (The Act) and pursuant regulations provide that a hospital accredited by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO) will be "deemed" to meet all of Medicare Conditions of Participation for Hospitals, with the exception of utilization review and the special staffing and medical record requirements for psychiatric hospitals.

To participate in the Health Insurance Program for the Aged and Disabled Program (Medicare) as a provider of psychiatric hospital services, a facility must meet all the provisions of Section 1861 (f) of the Act. In addition, a facility must be in compliance with the requirements for psychiatric hospitals at 42 C.F.R. §482.60.

After a careful review of the facts, the of Department of Health and Human Services, Centers for Medicare & Medicaid Services (formerly Health Care Financing Administration) has determined that your facility no longer meets the requirements for participation as a provider of psychiatric hospital services. Based on our review of the findings of the Centers for Medicare & Medicaid (CMS) survey completed on October 4, 2001, the Connecticut Valley Hospital is out of compliance with the following Medicare Condition of Participation:

### 42 C.F.R. §482.61 Special Medical Records

A complete listing of all deficiencies found during this survey is enclosed. Please provide a plan of correction for each deficiency listed and return the completed forms to this office within ten (10) days of your receipt of this letter. An acceptable Plan of Correction must include: how each deficiency has been or will be corrected, anticipated dates of completion for each item, measures that have been or will be put into place or systemic changes made to ensure that the deficient practice will not recur and how the facility will monitor its corrective actions to ensure that the deficient practice is being corrected and will not recur. In addition, for deficiencies that you may have already corrected, please provide any documentation to demonstrate such corrective action(s) e.g., policies, procedures, etc.

You are advised that in conformance with public disclosure laws this statement of deficiencies and your plan of correction will be on file for public review.

(1)

If your plan of correction is deemed acceptable we will conduct a follow-up survey to verify the degree of compliance achieved. The decision regarding continued certification for your facility will be made after the findings of the revisit are reviewed. If Condition level compliance is not achieved at that time, we will initiate action to terminate the Connecticut Valley Hospital from the Medicare program effective February 4, 2002. In the event termination action is initiated, you will receive formal notice from us prior to termination. At that time we will inform you of your rights to formal reconsideration and hearing procedures.

Thank you for your cooperation. If you have any questions please contact Rosalie DeGrace Brito of my staff at (617) 565-9160.

Sincerely yours,

Clifford Jackim, Acting Branch Chief
Survey and Enforcement Branch

cc:
CT State Agency
CSMO- Baltimore
Facility file
JCAHO

FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
HEALTH CARE FINANCING ADMINISTRATION

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER NUMBER 07-4003 | (X2) MULTIPLE CONSTRUCTION A. BUILDING ____ B. WING ____ | (X3) DATE SURVEY COMPLETED 10-4-01 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CONNECTICUT VALLEY HOSPITAL | SILVER STREET, PO BOX 351, MIDDLETOWN, CT 06457 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| B103 | **42 CFR 482.61 Condition of Participation: Special Medical Record Requirements for Psychiatric Hospitals**<br><br>The medical records maintained by a psychiatric hospital must permit determination of the degree and intensity of the treatment provided to individuals who are furnished services in the institution.<br><br>This condition is **NOT MET** as evidenced by:<br><br>Based on observations, patient and staff interviews, review of seclusion and restraint incident data, review of hospital policies and procedures and medical record review for <u>17 sample patients</u> (AA8, AA39, C5, C33, F7, G11, H9, E17, M4, M16, O1, O10, Q5, R19, T16, W2 and X3) and <u>13 non-sample patients</u> (J6, J10, K9, L4, L9, N2, N19, O12, R1, R14, R15, T15 and X9), it was determined that the use of seclusion and restraints is problematic for 12 of these patients. The facility's practices of patient seclusion and restraint deprived these patients of basic rights to be treated under the least restrictive circumstances feasible and to have access to active treatment measures during prolonged periods of seclusion and restraint. These practices deprive those patients in seclusion and restraint from the availability of the services of the variety of professional and technical staff needed to provide active psychiatric treatment to them.<br><br>1.  The facility was found to use seclusion and/or restraints as behavior modification techniques in 12 out of 30 patient charts reviewed. ( M16, O1, O10, J6, J10, K9, L4, L9, N19, O12, R14, and T15). Refer to B125 regarding documentation of active therapeutic efforts.<br><br>2.  The Medical Director and the Division Medical Directors did not assure that treatment services provided to 12 out of 30 patient charts reviewed ( M16, O1, O10, J6, J10, K9, L4, L9, N19, O12, R14, and T15) are in accordance with appropriate and acceptable standards of practice. Refer to B144 regarding monitoring and evaluating the quality and appropriateness of services and treatment provided by the medical staff. | | | |

| PROVIDER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See reverse for further instructions.) The findings above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM HCFA-2567 (10-84)

(3)

FORM APPROVED
OMB NO. 0938-0391

| MENT OF HEALTH AND HUMAN SERVICES<br>CARE FINANCING ADMINISTRATION | | | | |
|---|---|---|---|---|
| 'ATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER NUMBER<br>07-4003 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING_____<br>B. WING_____ | (X3) DATE SURVEY COMPLETED<br>10-4-01 | |

| E OF PROVIDER OR SUPPLIER<br>NECTICUT VALLEY HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE<br>SILVER STREET, PO BOX 351, MIDDLETOWN, CT 06457 |
|---|---|

| ID FIX G | SUMMARY STATEMENT OF DEFICIENCIES<br>(EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION<br>(EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| 125 | 482.61(c)(2) The treatment received by the patient must be documented in such a way to assure that all active therapeutic efforts are included..<br><br>This requirement is NOT MET as evidenced by:<br><br>Based on patient and staff interviews, review of seclusion and restraint incident data, review of hospital policies and procedures and medical record review of the use of restraint and/or seclusion since April 2001 for 3 sample patients (M16, O1, O10) and 13 non-sample patients (J6, J10, K9, L4, L9, N2, N19, O12, R1, R14, R15, T15 and X9), it was determined that the use of seclusion and restraints was problematic for 12 of these patients (J6, J10, K9, L4, L9, M16, N19, O1, O10, O12, R14 and T15). Records reflected significant periods of seclusion or restraints exceeding 3 hours. Treatment plans reflect the use of seclusion or restraints as Behavior Modification Techniques, rather than for provision of external control to insure patient and staff safety as emergency measures. Patients were retained in seclusion or restraint even when the patient's documented behaviors did not justify their use as emergency procedures. For these patients, there was no evidence during clinical observations of the patients or in the medical records that active treatment was provided. For these 12 patients, the use of these procedures resulted in a violation of the patients' right to be free from restraints. Restraints and seclusion were:<br>• Not used only when less restrictive measures had been found to be ineffective to protect the patient or others from harm,<br>• not implemented in the least restrictive manner possible, and~<br>• not ended at the earliest possible time.<br><br>Findings are:<br><br>1. Patient O10:<br><br>) is currently housed on Ward _____ Data in the record evidenced that | | | |

| OVIDER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See reverse for further instructions.) The findings above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM HCFA 2567 (10-84

(5)

DEPARTMENT OF HEALTH AND HUMAN SERVICES
HEALTH CARE FINANCING ADMINISTRATION

FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER NUMBER 07-4003 | (X2) MULTIPLE CONSTRUCTION A. BUILDING_____ B. WING _____ | (X3) DATE SURVEY COMPLETED 10-4-01 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER
CONNECTICUT VALLEY HOSPITAL

STREET ADDRESS, CITY, STATE, ZIP CODE
SILVER STREET, PO BOX 351, MIDDLETOWN, CT 06457

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| 3125 (cont) | considered to be present and significant. The only tool currently available to deal with this level of unpredictable dangerousness is the use of 4 point bed restraint." Review of the documentation of Patient 010's behavior during restraint revealed instances when documented behaviors have not justified the continued use of restraint; documentation did not always reflect the use of this procedure as being limited to the emergency safety situation. Documentation included criteria which were not justification for use of restraints. Monitoring/ supervision notes revealed that patient was "rocking head, restless, speaking with team, non responsive, mumbling, sleeping, sitting up talking, eating, quiet and/or lying with eyes closed" from 11:45 AM on 9/28/01 to 1:30 AM on 10/2/01 other than for 4or 5 brief instances of spitting, calling staff names, refusal of treatment or swearing. Nursing note at 1:30 AM on 9/30/01 states, "Order received for 4 point restraints to bed due to imminent danger to others NTE 3 hours. As assessed earlier by MD pt. Remains at risk for assaultive or dangerous behavior when awake. Pt. has been quietly lying in bed, eyes closed, turns head around occasionally to see who is sitting. Brief periods of head rocking... Due to recent past history of violent and assaultive behaviors and pt's. not discussing     taking responsibility for behavior and being cooperative with staff    remains unpredictable.   Will continue to assess in safe environment." Nursing note documented at 8:00 PM on 9/30/01 states, "Order received at 7:30 PM for 4 point restraint to bed due to imminent danger to others". MD note documented at 1:30 PM on 10/1/01 states, "Pt. asked when     is advancing to less restrictive measures: 'I've been good'. Patient was reminded of argumentative behavior during lunch, with missed attempt to spill milk on staff, and angry defiance with RN at noon...Sullen, angry, oppositional; easily hostile and belligerent; unpredictable. Renew 4-point restraints to bed. NTE (not to exceed) 3 hrs. due to imminent danger to others NTE 3 hrs. Although patient is resting quietly at present,   remains a risk for violence as assessed earlier by doctor...has a Hx of violence and injuries to | | | |

| PROVIDER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See reverse for further instructions.) The findings above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM HCFA-2567 (10-84)

If continuation sheet Page 6 of 16

(7)

| TMENT OF HEALTH AND HUMAN SERVICES 1 CARE FINANCING ADMINISTRATION | | | | OMB NO. 0938.0391 |
|---|---|---|---|---|
| TATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER NUMBER 07-4003 | (X2) MULTIPLE CONSTRUCTION A. BUILDING_____ B. WING_____ | | (X3) DATE SURVEY COMPLETED 10-4-01 |

| E OF PROVIDER OR SUPPLIER INECTICUT VALLEY HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE SILVER STREET, PO BOX 351, MIDDLETOWN, CT 06457 |
|---|---|

| ) ID FIX IG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| 3126 Cont) | Depakote.    behavior was escalating to the point of confrontation.    became angry when asked to stop touching    roommate's radio. Staff proceeded to use patient's "assasultive treatment plan" and put    in 4 point restraints at 2045. Patient had been warned prior to    out of control behavior (see "Restraint and Seclusion Focused Review" dated 6/27/01) not to threaten, not to break rules, and warned about not listening to staff direction.    remained in 4 point restraints from 6/27/01 at 2045 to 6/28/01 at 0730. The behavior documented on the nursing flow charts was primarily code 17 ("Quiet, no verbalization") and code 19 ("Lying down, eyes closed"). Description of behavior to demonstrate patient no longer imminently dangerous to self or others stated "see treatment plan". On 7/24/01 at 1015, patient was placed in 4 point restraints for lunging at a staff member. Release criteria was "no verbal abuse, no spitting, no threatening behavior able to talk with staff without escalating".    remained in 4 point restraints from 7/24/01 at 1015 to 7/24/01 at 2100. Behavior again documented mostly of being "quiet, lying down with eyes closed". On 7/24/01 at 2230    was placed in 4 point wrist and ankle ambulatory restraints for "imminent danger to others", however staff documented patient's response in S/R flow sheet as "cooperated with staff direction for 4 point ambulatory restraints per treatment plan". Patient remained in 4 point ambulatory restraints from 7/24/01 at 2230 to 7/26/01 at 1030. Reasons: "not responsive to verbal interventions, labile mood, unable to commit to safety". On 9/25/01 at 0800, patient was placed in locked seclusion for inappropriate touching, verbally threatening, and "physical posturing". At 0845,    behavior was documented as verbally quiet, lying down with eyes closed.    remained in seclusion until 9/25/01 at 2030, a total of 12.5 hours. Criteria for release was "stop verbal threats, be appropriate in milieu". 3. Patient O12 | | | |

| VIDER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See reverse for further instructions.) The findings above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM HCFA 2567 (10-94)

(9)

FORM APPROVED
OMB NO 0938-0391

| TMENT OF HEALTH AND HUMAN SERVICES<br>H CARE FINANCING ADMINISTRATION | | | |
|---|---|---|---|
| TATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER NUMBER<br>07-4003 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING_____<br>B. WING_____ | (X3) DATE SURVEY COMPLETED<br>10-4-01 |

| E OF PROVIDER OR SUPPLIER<br>NECTICUT VALLEY HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE<br>SILVER STREET, PO BOX 351, MIDDLETOWN, CT 06457 |
|---|---|

| ) ID<br>EFIX<br>AG | SUMMARY STATEMENT OF DEFICIENCIES<br>(EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION<br>(EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5)<br>COMPLETION DATE |
|---|---|---|---|---|
| 3128<br>Cont) | • Discuss anger management techniques that has already learned with one staff member for at least 15 minutes each day.<br>• Cooperate with daily, 15-30 minutes individual counseling sessions with the Dr.<br>• Cooperate with rehabilitation staff by playing cards, playing board games or working on puzzles." The patient's requirement to meet these criteria does not justify the use of restraints.<br>Review of progress notes and monitoring/supervision sheets revealed that Patient M16 was restrained from 8:00 AM on 9/13/01 until 9/18/01 at 1:30 PM even though the monitoring sheets stated that    was "quiet, awake, lying down and/or talking" during this entire period.  An MD patient assessment note documented at 7:30 PM on 9/17/01 stated "4 point restraint to bed renewed at 6:30 PM at this time as    has not been able to contract for safety."  This requirement for the patient is not justification for the use of restraint.<br><br>**5. Patient Q1**<br><br>. This patient was restrained 138 of 720 hours in Sept. 2001. Documentation revealed that on 9/18/01 at 4:30 PM    was placed in 4-point restraints for physically aggressive behaviors towards staff.    restraints were changed to ambulatory restraints on 9/19/01 at 1:45 PM and was retained in these until restraints were changed to ambulatory restraints on 9/19/01 at 1:45 PM and was retained in these until 9/24/01 at 10:00 AM.<br>Nursing note documented at 1:30 AM on 9/19/01 stated "Order received for 4 point restraints to bed due to imminent danger to others NTE 3 hours.  As assessed earlier by MD, patient remains restless with inappropriate mouth and hand gestures. Continues to attempt to masturbate. Occasionally sitting up in bed then lying back down." Nursing note at 4:30 AM on the same date stated, "Order received for 4 point restraint... Pt. has been restless but quietly lying in bed with eyes closed most of the time....Continues to be unwilling to take responsibility for    actions and behavior... Pt. Remains at risk for assaultive | | | |

| PROVIDER REPRESENTATIVE'S SIGNATURE | TITLE | (X5) DATE |
|---|---|---|
| | | |

Any deficiency statement ending with an asterisk (*) denotes a deficiency which may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See reverse for further instructions.)  The findings above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM HCFA-2567 (10-84)



TMENT OF HEALTH AND HUMAN SERVICES
TH CARE FINANCING ADMINISTRATION

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER NUMBER 07-4003 | (X2) MULTIPLE CONSTRUCTION A. BUILDING_____ B. WING _____ | (X3) DATE SURVEY COMPLETED 10-4-01 |
|---|---|---|---|

| NE OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NNECTICUT VALLEY HOSPITAL | SILVER STREET, PO BOX 351, MIDDLETOWN, CT 06457 |

| 4) ID REFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| B125 Cont) | this procedure". ___ was returned to restraints even though ___ treatment plan (dated 9/14/01) states, "Be ready to give ___ restraints anytime ___ makes a request for them once ___ is generally restraint free". The medical record does not document that less restrictive measures are used before proceeding to 3-4 point bed restraints and documents that ___ has been restrained the majority of the time since Sept 1, 2001. Patient N19 was in 4 point bed restraints from 2:00 AM to 4:30 AM and from 5:45 AM until 6:00 AM on 10/2/01 even though monitoring notes stated that ___ was "quiet, mumbling, snoring, lying down". ___ was restrained from 10:30 AM on 9/30/01 until 7:00 AM on 10/1/01 even though ___ monitoring and supervision notes documented that ___ was "quiet, lying down with eyes closed, mumbling, sleeping". These behaviors are not justification for restraint.

7. Patient 19

___ currently housed on Ward WH 3. ___ was restrained for 256.3 hours during Sept. 2001. ___ was in 4 point bed restraints when interviewed by the surveyor at 4:45 PM on 10/1/01 and in 4 point ambulatory restraints when interviewed at 2:55 PM on 10/2/01 and at 3:45 PM on 10/3/01. Although reluctant to talk, ___ was quiet and calm each time. ___ was in 4 point restraints from 5:00 PM on 10/2/01 until 1:30 AM on 10/3/01 even though monitoring/ supervision notes documented that ___ was "resting, talking or lying down" for this period of time. ___ was restrained from 6:30 AM on 10/1/01 until 11:30 AM on 10/2/01 even though monitoring notes stated that ___ was "quiet, withdrawn, restless, awake, mumbling, staring, laughing, sitting or overtalkative." These behaviors were not justification for the continuation of restraints Nursing notes documented at 3:15 AM and 6:15 AM on 9/24/01 state that order for 4 point bed restraints had been received. Both notes documented that the patient "was resting this entire period", or "awake and restless for approx. half hour" and "patient has not met criteria for decreased level of restraints". MD note documented at 6:15 PM on 9/24/01 stated, "Patient calm and generally cooperative... Unable to | | | |

| PROVIDER REPRESENTATIVE'S SIGNATURE | | TITLE | (X6) DATE |
|---|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See reverse for further instructions.) The findings above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM HCFA-2567 (10-84)    If continuation sheet Page 11 of 15

IMENT OF HEALTH AND HUMAN SERVICES
H CARE FINANCING ADMINISTRATION

FORM APPROVED
OMB NO. 0938-0391

| TATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER NUMBER 07-4003 | (X2) MULTIPLE CONSTRUCTION A. BUILDING_____ B. WING_____ | (X3) DATE SURVEY COMPLETED 10-4-01 |
|---|---|---|---|

E OF PROVIDER OR SUPPLIER
NECTICUT VALLEY HOSPITAL

STREET ADDRESS, CITY, STATE, ZIP CODE
SILVER STREET, PO BOX 351, MIDDLETOWN, CT 06457

| ) ID PFX G | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| 3125 Cont) | **11. Patient T15**<br><br>This patient was placed on Frequent Observation (FO) for assaultive behavior at time of admission, but was placed in 4-point restraints the following day for 3 hrs. Subsequently, there were 5 episodes of restraints for 3 hr periods between 7/1/01 and 8/6/01. From 8/6/01 until 8/24/01, patient was on FO. On 9/27 and 9/28: had a total of 12 hours of 4-point restraints. There is no Behavioral Treatment Plan, however the Master Treatment Plan addresses the use of less restrictive measures such as "educate patient on appropriate behavior and the importance of complying with ward milieu" and other interventions designed to de-escalate the patient's behavior.<br><br>**12. Patient R14**<br><br>This patient was in either 4 point bed restraints or 2 point ambulatory restraints continuously from 7/30/01 @ 2:30 PM until 10 PM on 8/1/01 for POS and POO. It should be noted that restraints were initiated when patient was in "Observation Room" and requested that be "assessed to smoke" and when this request was not fulfilled, punched the nurse. Flow charts indicated that patient was viewed by staff to be code 17 ("Quiet, no verbalization") and code 19 ("Lying down, eyes closed") fairly consistently starting on the 31st, but remained in seclusion for another day. There is an undated "plan" to be utilized by staff for placing patient on Constant Observation (CO) "if engages in assaultive or threatening behavior in the Hall Seclusion room" and to assess to "determine if will need to be placed in some form of restraints for protection and the protection of others safety".<br><br>A review of the Connecticut Valley Hospital policy, CARE OF PATIENTS RESTRAINTS FOR BEHAVIORAL MANAGEMENT" (Section 1, Policy 3, Procedure 3.17.2) states:<br><br>"Restraint may only be used as an emergency intervention to prevent immediate or imminent injury to the patient or others when no less restrictive alternative is effective. | | | |

| PROVIDER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See reverse for further instructions.) The findings above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM HCFA-2567 (10-84)

ARTMENT OF HEALTH AND HUMAN SERVICES
.TH CARE FINANCING ADMINISTRATION

FORM APPROVED
OMB NO. 0938.0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER NUMBER 07-4003 | (X2) MULTIPLE CONSTRUCTION A. BUILDING_____ B. WING_____ | (X3) DATE SURVEY COMPLETED 10-4-01 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER CONNECTICUT VALLEY HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE SILVER STREET, PO BOX 351, MIDDLETOWN, CT 06457 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| B148 | 482.62(d)(1) The director must demonstrate competence to participate in interdisciplinary formulation of individual treatment plans; to give skilled nursing care and therapy; and to direct, monitor, and evaluate the nursing care furnished.<br><br>This standard is NOT MET as evidenced by:<br><br>Based on patient observations, patient and staff interviews and medical record review of 17 sample and 13 non-sample patients, in 12 out of 30 patient charts reviewed ( M16, O1, O10, J6, J10, K9, L4, L9, N19, O12, R14, and T15), it was determined that the use of seclusion and restraints is problematic and monitoring with corrective action by the facility-wide Director of Nursing Services to ensure active treatment by nursing personnel is required.<br><br>1. Restraints were utilized as a behavior management tool rather than for provision of external control to insure patient and staff safety as emergency measures.<br><br>2. Patients were retained in seclusion or restraint even though, in many instances, the patients' behaviors did not justify emergency situations. For these instances, the use of these procedures resulted in a violation of the patients' right to be free from restraint and to receive active treatment during these periods.<br><br>See also B103 and B125 | | | |

| PROVIDER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See reverse for further instructions.) The findings above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM HCFA-2567 (10-84)

continuation sheet Page 15 of 15

(17)

## CERTIFICATION

I hereby certify that a copy of the forgoing <u>Declaration</u> was mailed in accordance with Rule 5 (b) of the Federal Rules of Civil Procedure on this 4th, day of October 2003 to:


Richard J. Lynch
Assistant Attorney General

Henry A. Salton
Assistant Attorney General

Kerry Anne Colson
Assistant Attorney General

55 Elm Street, P. O. Box 120
Hartford, CT 06141 – 0120



Robert Kalman, Pro se,

10