**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

FILED

2004 FEB 13 P 12: 00

US...

| | | |
|---|---|---|
| ROBERT KALMAN, PRO SE | : | PRISONER |
| *Plaintiff,* | | |
| V. | : | Civil Action No. 3:03cv 671 |
| | | (DJS) (TPS) |
| ROBERT BERGER, et al., | : | |
| *Defendants,* | | February 9, 2004 |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE OBJECTION TO
DEFENDANTS' TWO SUR-REPLY BRIEF'S

Plaintiff Robert Kalman, hereby respectfully submits this Memorandum of Law in support of his objection to defendant's two SUR-REPLY BRIEF'S submitted January 20, 2004 and January 22, 2004, in support of the MOTION TO DISMISS. Defendant's presentation includes unsupported arguments, fails to mention many of the undisputed facts, and mischaracterize numerous others.

On January 10, 2003, defendants held a hearing pursuant to Conn. Gen. Stat. Sec., 17a-583. On February 21, 2003, defendants ordered the plaintiff confined under conditions of maximum-security pursuant to Conn. Gen. Stat. Sec., 17a-599.

Defendants finding that plaintiff is "so violent" is without evidentiary support and is also in direct contradiction to the evidence. Plaintiff is filing this response to clarify the defendants' representation in their two Sur-Reply Brief's. As argued in detail below, the plaintiff objects to defendant's Sur-Reply Brief's for the following reasons:

1

A. DEFENDANTS ENJOY WHAT MAY BE TERMED A *PRESUMPTION OF CORRECTNESS* AS THEY
USE THEIR STRATEGIC POSITION TO TAKE ADVANTAGE OVER THE PLAINTIFF'S CLAIM.

The State Court is not allowed to hear the plaintiff's claim presented to this Court

because confinement pursuant to Conn. Gen. Stat. Sec., 17a-599 is not appealable under

Conn. Gen. Stat. Sec., 17a-597. The American Bar Association Commission on Standard

of Judicial Administration, in its Standards Relating to Appellate Courts, has declared

that an appellate court:

> "should consider an issue that was not raised in the court below only where necessary
> to prevent manifest injustice or where it concerns the court's jurisdiction or that of
> the court below ." A.B.A. COMM'N ON STANDARDS OF JUDICIAL ADMINISTRATION:
> STANDARDS RELATING TO APPELLATE COURTS SEC., 311 (1977).

Because the Connecticut Supreme Court has held that PSRB determination regarding

the need for *maximum-security* confinement is not appealable under Conn. Gen. Stat.,

Sec., 17a-597, the plaintiffs Administrative Appeal will not address the matters raised in

the present action before this Honorable Court. See Dyous v. Psychiatric Security Review

Board, 264 Conn. 766 (2003). In addition the plaintiff submits the copy of APPEAL FROM

THE PSYCHIATRIC SECURITY REVIEW BOARD attached as Exhibit A. Robert Kalman v.

Psychiatric Security Review Board., DOCKET NO CV 03-05202204. In other words, is

there a right to appeal confinement under conditions of ***maximum-security***? The answer

is simple. No.

The legal issue before the Connecticut Superior Court is distinct and dismissal on

basis of abstention does not apply to this case. The defendants wrongly assert in their

Motion to Dismiss that the issue on appeal in State Court is the interpretation of

confinement under maximum-security Conn. Gen. Stat. Sec., 17a-599. The plaintiff is not

seeking a Declaration of his Constitutional Rights in his Administrative Appeal. As the Supreme Court has recently explained:

> "At least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." Miller v. Fenton, 474 U.S. 104, 114 (1985); *see also* Monoghan, Constitutional Fact Review, 85 COLUM. L. Rev. 229, 237 (1985).

In the Administrative Appeal that is pursuant to Conn. Gen. Stat. Sec., 4-183 and 17a-597 in the Superior Court the plaintiff is only seeking remedies that would:

1. An order sustaining the appeal;

2. An order directing the Psychiatric Security Review Board to vacate and set aside its decision to confine Kalman to the maximum-security facility of Whiting;

3. Such other further relief as justice and equity may require.

Please see STATEMENT OF REMEDIES SOUGHT attached as Exhibit B.

In the present case this Honorable Court can grant a Federal Declaratory Judgement stating that defendants violated the plaintiffs Federal Constitutional Rights under the Fourteenth Amendment when they ordered him confined under conditions of maximum-security pursuant to Conn. Gen. Stat. Sec., 17a-599. The Supreme Court stated in United States v. American Trucking Association, that:

> "There is of course, no more persuasive evidence of the purpose of the statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has lead to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act." Id. At 543 (footnote omitted).

It should be noted that the Conn. Supreme Court in the <u>Dyous</u>, decision did not focus on federal constitutional issues, but rather on the state's statutory framework for regulating transferees of acquittees and the right to appeal order entered by defendants pursuant to Conn. Gen. Stat, Sec., 17a-599.

B.     DEFENDANT'S FACTUAL PRESENTATION IS RIDDLED WITH INCONSISTENCIES

While the defendant's note that ***"his attorney has filed on the plaintiff's behalf an application for conditional release..."***

Contrary to this representation made by defendants the fact is that plaintiff filed a pro se "APPLICATION TO REOPEN A HEARING FOR RECONSIDERATION BY THE PSYCHIATRIC SECURITY REVIEW BOARD OF ITS DECISION TO CONFINE ROBERT KALMAN UNDER CONDITIONS OF MAXIMUM-SECURITY" See Exhibit C.   The defendants denied the plaintiffs pro se, application to reopen the hearing of January 10, 2003.   Pursuant to Conn. Gen. Stat. Sec., 17a-588(b), the plaintiff also moved the defendants for a hearing for conditional release. See Exhibit C, which continues "AND ACQUITTEE'S FIRST APPLICATION FOR CONDITIONAL RELEASE FROM CONFINEMENT AT WHITING FORENSIC INSTITUTE." Exhibit C is signed by the plaintiff and not by his counsel.

Moreover it is note worthy that defendants held a hearing November 14, 2003, on the conditional release application. However, the defendants failed to provide the plaintiff with a copy of the report submitted by the treatment team. The plaintiff has contacted the office of the PSRB, five business days before the hearing requesting a copy of the said report. On November 14, 2003, during the hearing the defendants did not provide the plaintiff with a copy of the report Conn. Gen. Stat. Sec., 17a-588(b). On December 11,

2003, plaintiff filed written request pursuant to the FREEDOM OF INFORMATION ACT, of the State of Connecticut. See Exhibit D.

The Program Coordinator of the defendants forwarded the report under a cover letter on December 18, 2003. It is also note worthy that plaintiff made numerous verbal requests to the hospital treatment team for a copy of the report but the requests were denied. Plaintiff also submitted pursuant to DMHAS policy a Medical Records request but the hospital did not honor this request only on or about December 22, 2003. It is in violation of due process to schedule a hearing but not to provide the petitioner with the documentation. The Treatment Team, the Defendants, the Hospital Administrators were aware of the fact that plaintiff has no knowledge of the contents of the report. There is no need to say any more.

Pertaining to the defendants presentation that **"Currently, the PSRB is also scheduled to hold a hearing on the plaintiff's application for conditional release on January 23, 2004."** On ~~January 14, 2004~~ November 14, 2003, defendant Robert B. Berger stated **"...we're going to adjourn this hearing sine die, without a date, and you will be notified as to when can we work it into our schedule."** The defendants presentation in the Sur-Reply Brief reflects a substantial departure from the contents of the transcript of the hearing November 14, 2003. Defendants' also assert that plaintiff has an adequate means of addressing his federal ADA and 14th, amendment claims before the PSRB. Also on November 14, 2003, hearing on conditional release the Chairman Robert B. Berger: **"- - and I do not recall of one being granted directly from Whiting Forensic Institute. They're usually granted from CVH..."**

5

C.          CONTRARY TO DEFENDANT'S ARGUMENT THIS HONORABLE COURT HAS THE
            AUTHORITY AND DISCRETION TO EXERCISE ITS JURISDICTION

The plaintiff brought this legal action against the defendants seeking Federal

Declaratory Judgements stating that his Federal Constitutional rights were violated under

the Fourteenth Amendment and under the American with Disabilities Act, Title II. Under

section C, the plaintiff is requesting this Honorable Court to: "Grant such other relief as it

may appear that the plaintiff is entitled." The plaintiff in his pro se complaint did not

demand damages from the defendants but this Honorable Court under section C, of the

complaint can exercise its jurisdiction. See, Thomas F. Moran, v.Connecticut Department

of Public Health and Addiction Services, et al., Civil No. 3:96cv448 (PCD).


The Ninth Circuit held that Congress had validly abrogated states' immunity

under Title II. See, Hason v. Medical Brd., 279 F.3d 1167, 1171, *reh'g en banc denied*,

294 F.3d 1166 (9 th Cir. 2002.), 26 MPDLR. **"Once a panel resolves an issue in**

**precedentcial opinion, the matter is deemed resolved, unless overruled by the court**

**itself sitting en banc, or by the Supreme Court."** See Hart v. Massanari, 266 F. 3d

1155, 1171 (9th Cir.2001). Consequently the Appeals Court considered itself bound by

the Hason, holding and declined further review of its settled precedent. See Thomas v.

Nakatani, 309 F.ed 1203, 1209 (9th Cir. 2002) (stating that Hason reaffirmed previous

holdings that Congress validly abrogated sovereign immunity under Title II); see also

Lovell v. Chandler, 303 F.3d 1039, 1951 (9th Cir. 2002), 26 MPDLR 927. The court also

pointed out in its ruling in Clark v. California, 123 F.3d 1267 (9th Cir. 1997), 21 MPDLR

731, that Congress validly abrogated the states Eleventh Amendment Immunity under

Section 504, and by accepting federal funds, states waive any Eleventh Amendment Immunity they might have possessed. Id. at 1271.


CONCLUSION

For each reasons set forth above, this Honorable Court should not entertain Defendants' Sur-Reply Brief and the Amended Sur-Reply Brief.


RESPECTFULLY SUBMITTED,

DATED: FEBRUARY 9, 2004


THE PLAINTIFF

By: _____
Robert Kalman
Whiting Forensic Institute
P. O. Box 70 O' Brien Dr
Middletown, CT 06457

**CERTIFICATION**

I hereby certify that a copy of the forgoing Memorandum of Law was mailed in accordance with Rule 5 (b) of the Federal Rules of Civil Procedure on this 9 th, day of February 2004 to:

Richard J. Lynch
Assistant Attorney General

Henry A. Salton
Assistant Attorney General

Kerry Anne Colson
Assistant Attorney General
55 Elm Street, P. O. Box 120
Hartford, CT 06141 – 0120

_____
Robert Kalman
Whiting Forensic Institute

7

DOCKET NO. CV 03-0520204

ROBERT KALMAN                     :    SUPERIOR COURT
                                 :
                                 :    JUDICIAL DISTRICT OF NEW BRITAIN
        v.                       :    AT NEW BRITAIN
                                 :
PSYCHIATRIC SECURITY             :
   REVIEW BOARD                  :    JANUARY 30, 2004

### APPEAL FROM THE PSYCHIATRIC SECURITY REVIEW BOARD

On October 30, 2001 Robert Kalman, the appellant herein, was acquitted by reason of mental disease or defect of the charges of illegal possession of explosives,[1] failure to appear in the first degree,[2] and two counts of risk of injury to a minor.[3]  On September 26, 2002, following a hearing in the Superior Court pursuant to C.G.S. §17a-582, the appellant was committed to the jurisdiction of the Psychiatric Security Review Board[4] for a period not to exceed thirty-five years, the aggregate maximum term of imprisonment had Mr. Kalman been convicted on all charges.  In committing the appellant, the Court specifically found that he was not so violent as to require confinement under maximum security conditions, but nevertheless

---

1.      C.G.S. §29-348.

2.      C.G.S. §53a-172.

3.      C.G.S. §53-21(a)(1).

4.      Hereinafter, "the PSRB," or "the Board."

-2-

directed that he be confined at the state's maximum security unit
at the Whiting Forensic Division of Connecticut Valley Hospital.[5]

On January 10, 2003, the Board held a hearing pursuant to
C.G.S. §17a-583 to determine whether Mr. Kalman should be dis-
charged, conditionally released or confined and, if confinement
was ordered, whether he required confinement under maximum
security conditions.  In addition to the written reports of prior
psychiatric examinations and various court documents concerning
the circumstances of the criminal charges against Mr. Kalman,
evidence before the Board included the live testimony of two
state psychiatrists presently or formerly involved with Mr. Kal-
man's care.  The treating psychiatrists concurred with the diag-
nosis offered by an outside psychiatrist retained by the appel-
lant,[6] that Mr. Kalman suffered from alcohol and cocaine depend-
ence, both in remission while Mr. Kalman was in a controlled en-
vironment, and adult antisocial personality disorder.[7]  There was

---

5.      The commitment document included with the record contains
a checked box stating that the appellant was sufficiently violent
as to require maximum security confinement.  See R-219.  This is
erroneous.  The appellant includes as an exhibit to this
memorandum an excerpt from transcript setting forth the Court's
determination.

6.      The outside evaluation was conducted by Dr. Peter M.
Zeman.

7.      See, R-52-58 (Dr. Zeman's evaluation); R-II-3-7 (Testimony
of Dr. Alexander Carre, 1-10-03).

-3-

no testimony at the hearing that Mr. Kalman was or had been violent.[8]  Both Dr. Zeman and the treating psychiatrists felt that while Mr. Kalman required the structure of inpatient treatment, he could appropriately be treated in a less restrictive setting, such as the Dutcher Hall unit at Connecticut Valley Hospital.[9]

On February 21, 2003, the Board filed its decision.  It found that Mr. Kalman was mentally ill and required inpatient treatment.  It further found, not only without evidentiary support but in direct contradiction to the evidence, that Mr. Kalman was so violent as to requirement confinement under maximum security conditions.[10]  This appeal, pursuant to C.G.S. §17a-597 and C.G.S. §4-183 followed.[11]

---

8.       R-II-10-11.

9.       See, R-57 (Dr. Zeman report); R-II-13;24; 25-26.

10.      R-1-3.

11.      Because our Supreme Court has held that a PSRB determination regarding the need for maximum security confinement is not appealable under C.G.S. §17a-597, that issue is not presented in this appeal.  Dyous v. Psychiatric Security Review Board, 264 Conn. 766 (2003).

- 4 -

The legal standards governing this appeal arise not only from the relevant Connecticut statutes, but from the United States Constitution as well. It is firmly settled that a person acquitted of a crime on the ground of mental disease or defect may be involuntarily held if, and only if, that person continues to be both mentally ill and dangerous. See, e.g., Jones v. United States, 463 U.S. 354, 368 (1983); Foucha v. Louisiana, 504 U.S. 71, 77 (1992). In the present case, the Board's finding of mental illness rested solely on diagnoses of cocaine and alcohol dependence, both in remission while Mr. Kalman was in a controlled environment.12/ The finding of dangerousness rested on the view of the involved psychiatrists that, if released, Mr. Kalman would revert to the use and abuse of these substances, and might consequently engage in criminal conduct. The appellant respectfully submits that neither the Board's conclusion regarding the existence of a mental illness requiring confinement, nor its conclusion regarding Mr. Kalman's probable dangerousness if discharged or conditionally released can be sustained.

---

12.      Mr. Kalman's Axis II diagnosis of adult antisocial personality disorder is not, as a matter of law, a diagnosis of mental illness which could support the Board's confinement order. See, Foucha v. Louisiana, 504 U.S. 71, 75 (1992).

-5-

As a threshold matter, the appellant does not dispute that alcohol and cocaine dependence are psychiatric disabilities within the ambit of the American Psychiatric Association's _Diag-nostic and Statistical Manual of Mental Disorders_ (DSM-IV),[13]/ and consequently represent "mental illnesses" within the meaning of the pertinent PSRB regulations.[14]/  See, Regs., Conn. State Agen-cies, §17a-581-2(a)(5).  That does not end the matter, however, because, unlike for example, a diagnosis of schizophrenia or other psychotic disorders, a diagnosis of substance dependence, especially substance dependence in remission while in a control-led environment, says nothing more than that at some point in the past, i.e., prior to confinement, Mr. Kalman was dependent on cocaine and alcohol.  It says nothing about his current status, which is, and for more than two years has been, substance-free, and supports nothing stronger than a surmise that if Mr. Kalman was returned to a setting where alcohol and cocaine were avail-able he might once again become dependent on them.  As employed by the Board, the mental illness diagnosis of substance depend-

---

13.    DSM-IV, §§303.90 (alcohol dependence), 304.20 (cocaine de-pendence).

14.    Substance dependence is a so-called Axis I diagnosis under the DSM-IV.  By contrast, antisocial personality is an Axis II diagnosis, which is not treated as a mental illness and would not alone support Mr. Kalman's involutary confinement or treatment.

-6-

ence, in remission in a controlled environment is a diagnostic

black hole from which there is no escape.  So long as Mr. Kalman

remains in a controlled environment he can, as a matter of

definition, never progress to a clinically relevant level of

remission as to his substance dependence, because the DSM-IV does

not contemplate the application of such classifications so long

as the subject individual remains in a controlled setting.[15]/

At least under facts like those presented here, the ap-

pellant submits that a diagnosis of past substance abuse or de-

pendence should not and does not represent the type of finding of

mental illness which may support the involuntary confinement of a

person acquitted of criminal conduct on the ground of mental dis-

ease or defect.  It represents less a current mental health diag-

nosis than a  descriptor of past behavior and, significantly, a

behavioral descriptor that as a matter of law could not support

Mr. Kalman's criminal acquittal.[16]/  If, as the Board evidently

fears, Mr. Kalman was released from confinement, resumed the use

15.    See, A. Frances, M. First, H. Pincus, DSM-IV Guidebook, p.
136: "Early and Sustained Remission...do not apply when in-
dividuals are...in an environment where their access to substan-
ces is severely restricted."

16.    C.G.S. §53a-13(b) specifically provides that a mental dis-
ease or defect caused by the voluntary ingestion of drugs or al-
cohol may not, in most instances, support an acquittal by reason
of mental disease or defect.

-7-

of alcohol or cocaine, and consequently engaged in criminal con-
duct, he could and should be charged and convicted of such con-
duct, and be subject to the usual penalties associated with such
conduct. Use of a substance abuse diagnosis to justify Mr. Kal-
man's continued confinement qualitatively represents punishment
for his past and potential future substance dependence, and would
run afoul of the Eighth Amendment to the United States Constitu-
tion. See, <u>Robinson</u> v. <u>California</u>, 370 U.S. 660 (1962).

The Board's conclusion with respect to Mr. Kalman's
"dangerousness" is similarly untenable. The identified danger is
that, if released from confinement, Mr. Kalman <u>might</u> revert to
the use or abuse of alcohol or cocaine, and <u>might</u> then engage in
criminal conduct. In <u>Foucha</u> v. <u>Louisiana</u>, <u>supra</u>, the United
States Supreme Court rejected logic of this sort as the basis for
continued involuntary confinement. As the Court stated:<u>17/</u>

> Here...the State asserts that because Foucha once committed
> a criminal act and now has an antisocial personality that
> sometimes leads to aggressive conduct, a disorder for which
> there is no effective treatment, he may be held indefinite-
> ly. This rationale would permit the State to hold in-
> definitely any other insanity acquittee not mentally ill who
> could be shown to have a personality disorder that may lead
> to criminal conduct. The same would be true of any con-
> victed criminal, even though he has completed his prison
> term. It would also be only a step away from substituting
> confinement for dangerousness for our present system which,

---

17.    504 U.S., at 82-83.

-8-

> with only narrow exceptions and aside from permissible con-
> finements for mental illness, incarcerates only those who
> are proved beyond reasonable doubt to have violated a
> criminal law.

Even if the sort of attenuated speculation as to Mr. Kal-
man's future use of alcohol or drugs, and the further speculation
regarding the behavioral effects of such substance abuse, could
sustain a finding of future dangerousness, the Board's analysis
proves too much.  The psychiatric evaluation conducted in March,
2002 by Mr. Kalman's Whiting evaluation team posited its assess-
ment of the risk that Mr. Kalman would revert to substance abuse
if discharged on "his lack of any significant periods of substan-
ce free living."[18]/  The evaluation conducted by the outside
psychiatrist, Dr. Zeman, similarly chronicles a course of alcohol
and cocaine abuse extending over a number of years prior to the
events which resulted in Mr. Kalman being criminally charged.
Neither of these evaluations note, however, that prior to the
brief and limited period in which Mr. Kalman engaged in the be-
havior resulting in his present confinement, his documented pat-
tern of substance abuse resulted in no "dangerous" behavior.  If
past behavior is to be employed as a predictor of future
dangerousness, and that is the lynchpin of the Board's conclu-

------------------------------------------------

18.      R-48.

-9-

sion, then what Mr. Kalman's past behavior demonstrates is that his substance abuse or dependence is <u>not</u> correlated with dangerous behavior, and provides no evidence that his discharge or conditional release would be dangerous to him or society.

The facts in <u>Foucha</u> v. <u>Louisiana</u>, <u>supra</u> bear a meaningful similarity to those here and merit discussion.  Mr. Foucha had been acquitted by reason of insanity of aggravated burglary and illegal discharge of a firearm.  Pursuant to the governing Louisiana statutory scheme he was confined in a mental institution, and was subject to continued confinement unless he could sustain the burden of proving that he was no longer dangerous. In the course of a discharge proceeding, Mr. Foucha's mental status was evaluated, and it was concluded that he was "presently in remission from mental illness," and that at the time of his commitment he "probably suffered from a drug induced psychosis."<u>19</u>/  However, because Mr. Foucha, unlike Mr. Kalman, had been involved in several physical altercations while confined, the evaluating psychiatrist testified that he "would not feel comfortable in certifying that [Foucha] would not be a danger to himself or to other people" if released.<u>20</u>/  On this

---

19.    504 U.S., at 74-75.

20.    <u>Id.</u>

-10-

basis, the court found that Foucha had failed to sustain his bur-
den of proving that his release would not result in danger to
himself or others, and returned him to confinement at the
psychiatric facility.  This determination was sustained on appeal
to the Louisiana Supreme Court.

The United States Supreme Court reversed, holding that
mere speculation about possible future dangerousness could not
support continued involuntary confinement where there was no
finding of present mental illness,[21] i.e., where Mr. Foucha was
"presently in remission from mental illness."[22]  Like Mr. Kalman,
Mr. Foucha's criminal conduct appears to have arisen from a "drug
induced psychosis," which the Court characterized as a "temporary
condition."  The two material material differences between Foucha
and the present case, are, first, that in Foucha, the treating
psychiatrists had not chosen to label Mr. Foucha as substance de-
pendent based on his pre-confinement behavior, and consequently
offered no present diagnosis of mental illness.  The second sig-
nificant difference between the facts in Foucha and those here is

_____

21.    As noted above, Mr. Foucha had a psychiatric diagnosis of
antisocial personality, but the Supreme Court characterized that
diagnosis as "not a mental disease and...untreatable." 504 U.S.,
at 75.

22.    504 U.S., at 74.

-11-

that, unlike Mr. Kalman, Mr. Foucha had actually engaged in violent and disruptive behavior while confined, and could reasonably be thought to present a risk of danger to himself or others if released.  As discussed above, the Supreme Court held that this was insufficient to sustain Mr. Foucha's continued involuntary confinement.  For the reasons previously discussed, the appellant submits that the Board's action in the present case, attaching to Mr. Kalman a diagnosis of <u>present</u> mental illness based solely on his pre-confinement substance dependence and sheer speculation as to the likelihood that on release Mr. Kalman would once again manifest such substance dependence <u>and</u> consequently engage in criminal behavior, cannot support his continued involuntary confinement, and that the Board's order consequently runs afoul of the due process holding of <u>Foucha</u>.

C.G.S. §4-183(j) requires this Court to sustain Mr. Kalman's appeal, and to vacate the decision of the PSRB if it concludes that the PSRB's action is "in violation of constitutional provisions," is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record," or is "arbitrary, capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."  For the reasons set

-12-

out above, the decision presently appealed fails under all three standards, and must consequently be reversed.

RESPECTFULLY SUBMITTED,
ROBERT KALMAN


BY: _____
Glenn M. Conway, Esq.
Knight, Conway & Cerritelli, LLC
7-9 Elm Street, 2nd Fl.
New Haven, CT. 06510


## CERTIFICATION

This is to certify that a copy of the foregoing was served on counsel of record for the Psychiatric Security Review Board in accordance with the provisions of the Practice Book.


_____
Glenn M. Conway

SUPERIOR COURT

JUDICIAL DISTRICT OF NEW HAVEN AT NEW HAVEN

4      * * * * * * * * * * * * * * *

5      STATE OF CONNECTICUT                    *

6                                              *

7      VS                                      *        CASE NO: 4920009

8                                              *        SEPTEMBER 26, 2002

9      ROBERT KALMAN                  *

10                                             *

11     * * * * * * * * * * * * * * *

12

13

14     B E F O R E:      HONORABLE LUBBIE HARPER, JR.

15

16

17     A P P E A R A N C E S:

18

19                      FOR THE STATE:

20                      RICHARD PALUMBO

21

22                      FOR THE DEFENDANT:

23                      GLENN CONWAY, ESQ.

24

25

26

27

danger and you react on it, you should learn to

respond.  That's the way society functions.  I will

point out for the court that I would like to have a

therapist who I can work with and engage with, that I

can learn to respond instead of react.

Mr. Nobil is right here in this courtroom.  He's

the one who said to me it is not his fault that my life

is in danger from the Hell's Angels.  I used drugs for

years before, I never reacted the way I reacted after I

was informed about that.  So only thing I'm asking,

yes, I did many things wrong.  Only thing I want to be

placed where I can benefit instead of just watching

physical violence on daily basis at Whiting because

that's what you see repeatedly at Whiting.  Or instead

of watching people get hurt left and right, I would

like to be in hospital instead of being in a mad house.

It's major difference between a hospital and being at

Whiting.

THE COURT:  I appreciate that.  I hear what you're

saying.  I think I hear you saying you want to be in a

place where you can receive the best treatment.

THE DEFENDANT:  Yes.

THE COURT:  Thank you.  Any other comments?

Before making its findings, this court notes that

predictions of future dangerousness are difficult for

both psychiatrists and courts to make because of the

inherent vagueness of the concept itself and such

determinations must be dealt with by trial courts to a

considerable extent on a case by case basis.  The

determination of dangerousness in the context of a

mental status hearing reflects a societal rather than a

medical judgment in which the rights and needs of the

defendant must be balanced against the security

interest of society.  Moreover, a psychiatric

consultation as to a defendant's condition may form an

important part of the trial court's ultimate

determination.  The court is not bound by this

evidence.  It may in its discretion accept all, part or

none of the expert's testimony.  In reaching its

difficult decision, the court may consider the entire

record available to it including the defendant's

history of mental illness, his present and past

diagnosis, his past violent behavior, the nature of the

offense for which he was prosecuted, the need for

continued medication and therapy and the prospects for

supervision if released.  This court has carefully

considered all of the evidence presented including the

acquittee's history of mental illness, his present and

past diagnosis, his past violent behavior, the nature

of the offense for which he was prosecuted, the need

for continued medication and therapy and the prospect

of supervision if released.  Based on the consideration

of all these factors this court finds that the

acquittee has a mental condition characterized by

1      alcohol dependence, in remission in a controlled

2      environment; cocaine dependence, in remission in a

3      controlled environment; other substance induced mood

4      disorder, cocaine and alcohol; adult antisocial

5      personality disorder and problems related to

6      interaction with the legal system and crime.

7          Bearing in mind this court's primary concern is

8      the protection of society and based on the

9      aforementioned factors including the examination of the

10     acquittee conducted by the department of mental health

11     and addiction services, the independent examination of

12     the acquittee by Doctor Peter M. Zeman of the Institute

13     for Living Medical Group, P.C, and attendant testimony

14     of Doctor Peter M. Zeman and Doctor Alexander Carre,

15     the arguments of the attorneys as well as the entire

16     record in this case, this court finds that this

17     acquittee remains a danger both to himself and the

18     community and must be confined.  Further, although this

19     court finds that there is insufficient evidence to find

20     that the acquittee is so, and I emphasize so violent as

21     to require a commitment under conditions of maximum

22     security, the court nevertheless finds that the

23     potential for violence exists and the acquittee needs a

24     highly structured environment and that that

25     environment, therapeutic milieu, would be in the

26     acquittee's best interest.

27         Therefore, this court orders the acquittee

1    committed to the jurisdiction of the psychiatric review

2    board at the maximum setting of the Whiting Forensic

3    Division of Connecticut Valley Hospital pending a

4    hearing before the board under section 17a-583 of the

5    Connecticut General Statutes.  The court further

6    authorizes the release of all psychiatric reports

7    concerning the acquittee that are in the case file to

8    the psychiatric security review board.  The maximum

9    term of confinement will be as follows with respect to

10   each applicable count of the Information.  Count 1,

11   illegal possession of explosives, 10 years.  Count 4,

12   risk of injury to a minor, 10 years.  Count 5, risk of

13   injury to a minor, 10 years.  Count 6, failure to

14   appear in the first degree, 5 years.  Each of those

15   terms of confinement are to be consecutive to each

16   other for a total effective maximum term of commitment

17   of 35 years.

18        Mr. Kalman, pursuant to the provision of

19   Connecticut General Statute 17a-582 you are hereby

20   notified that you may appeal the court's order

21   committing you to the jurisdiction of the psychiatric

22   security review board and order you confined in a

23   hospital for psychiatric disability for special care

24   and treatment pending a hearing before said board

25   pursuant to section 17a-583 of the Connecticut General

26   Statutes.  You're also advised that pursuant to

27   Connecticut General Statute 17a-582 you have the right

54

1    to a hearing before they psychiatric security review

2    board and in accordance with Connecticut General State

3    17a-583.

4         Mr. Conway, I'm going to have my clerk give you

5    the notice of appeal so that you can have Mr. Kalman

6    sign that.  Counsel, any other issues or concerns

7    pertaining to this matter?

8         MR. PALUMBO:  There are other pending files --

9    pending charges in this file which the defendant was --

10   the court ordered a mistrial on.  If those files and

11   pending charges in this file may be transferred back to

12   the GA court for a date certain.

13        THE COURT:  Mr. Conway, in terms of a date.

14        MR. CONWAY:  I would be looking for a date in late

15   October, with the court's permission?

16        THE COURT:  October 29th.

17             (A recess was taken.)

1                          SUPERIOR COURT

2              JUDICIAL DISTRICT OF NEW HAVEN AT NEW HAVEN

3

4      * * * * * * * * * * * * * *

5      STATE OF CONNECTICUT            *

6              VS                      *

7      ROBERT KALMAN                   *

8      * * * * * * * * * * * * * *

9

10

11                         CERTIFICATION

12              This is to certify that the foregoing is a true

13         and accurate transcript of my stenographic notes taken

14         in the above proceedings before the Honorable Lubbie

15         Harper, Jr, held on September 26, 2002.

16      Dated at New Haven, Connecticut

17      this 18th day of March 2003.

18

19

20      _____

21                         ANDREW POLEMENI

22

23

24

25

26

27

Return Date:   April  22, 2003              )   SUPERIOR COURT
                                            )
ROBERT KALMAN                               )   JUDICIAL DISTRICT OF NEW BRITAIN
                                            )   AT NEW BRITAIN
      V.                                    )
                                            )
PSYCHIATRIC SECURITY REVIEW                 )   MARCH 19, 2003
BOARD                                       )
                                            )
                                            )

## STATEMENT OF REMEDIES SOUGHT

Appellant Robert Kalman appeals from the final decision of the appellee

Psychiatric Security Review Board pursuant to §§ 4-183 and 17a-597 of the Connecticut

General Statutes and prays the Court for the following relief:

1.  An order sustaining the appeal;

2.  An order directing the Psychiatric Security Review Board to vacate and set

    aside its decision to confine Kalman to the maximum-security facility of

    Whiting;

3.  Such other further relief as justice and equity may require.

This matter is within the jurisdiction of the Court.

Dated at Middletown, Connecticut this 19th day of March, 2003.

PLAINTIFF/APPELLANT
ROBERT KALMAN

By: Suzanne L. McAlpine, Esq.
Deputy Asst. Public Defender
Public Defender's Office
CVH, Dix Hall
P.O. Box 351
Middletown, CT 06457
(860) 262-5913
F:(860) 262-5915
Juris No. 402941



PSRB No. 0291    ) PSYCHIATRIC SECURITY REVIEW

                 (            BOARD

ROBERT KALMAN         )    SEPTEMBER 20, 2003

---

**<u>ACQUITTEE'S APPLICATION TO REOPEN A HEARING FOR RECONSIDERATION</u>**
**<u>BY THE PSYCHIATRIC SECURITY REVIEW BOARD OF ITS DECISION TO</u>**
**<u>CONFINE ROBERT KALMAN UNDER CONDITIONS OF MAXIMUM-SECURITY</u>**
**<u>AND</u>**
**<u>ACQUITTEE'S FIRST APPLICATION FOR CONDITIONAL RELEASE FROM</u>**
**<u>THE CONFINEMENT AT WHITING FORENSIC INSTITUTE</u>**

        Robert Kalman (hereinafter "acquittee"), respectfully
requests that the Connecticut Psychiatric Security Review Board
(hereinafter "board"), reopen the hearing held Conn. Gen. Stat.
Sec., 17a-583, on the 10th day of January 2003, to review the
commitment of the acquittee to its jurisdiction and confinement
under maximum-security conditions at Whiting Forensic.

    The acquitte respectfully requests that the Board schedule
this issue for an evidentiary hearing before the Board, wherein
additional witness testimony and/or other relevant evidence can
be presented regarding the appropriateness of the acquittee's
confinement.

    Pursuant to Connecticut General Statutes Sections 17a-588(b),
17a-583, 17a-584 and 17a-580, the acquittee respectfully moves
and applies to the Board for an order for his conditional
release from confinement.

1

**BRIEF HISTORY AND SPECIFIC FACTS**

1. Following a trial before the Honorable Lubbie Harper, Jr. and a jury of six, the jury found the acquittee not guilty by reason of mental disease or defect pursuant to Conn. Gen. Stat. Sec. 53a-13, on October 30, 2001.

2. Following a hearing held pursuant to Conn. Gen. Stat. Sec. 17a-582 before the Honorable Lubbie Harper, Jr. on September 26, 2002, committed the acquittee to the jurisdiction of the Psychiatric Security Review Board for a period of time not to exceed thirty five (35) years.

3. On January 10, 2003, the Board held initial hearing pursuant to Conn. Gen. Stat. Sec. 17a-583, to make a finding and act pursuant to Conn. Gen. Stat. Sec., 17a-584.

4. The Board issued a Memorandum of Decision dated February 21, 2003, finding that Robert Kalman "is so violent that he requires confinement within a maximum-security setting."

5. At the hearing held pursuant to Conn. Gen. Stat. Sec. 17a-582 before the Honorable Lubbie Harper, Jr. on September 26, 2002, the trial court expressly concluded that there was insufficient evidence that the acquittee was "so violent as to require maximum-security confinement" (See Exhibit A, 9/26/02 at 52 – 53).

6. At the hearing held pursuant to Conn. Gen. Stat. Sec. 17a-583 on January 10, 2003, before the Board the testifying expert from Whiting testified that the acquittee's diagnosis

1   of personality disorder; alcohol dependence in remission in
2   a controlled environment; cocaine dependence in remission in
3   a controlled environment, were not disorders that qualified
4   as a defense to criminal conduct pursuant to Conn. Gen.
5   Stat. Sec. 53a-13, and that he doubted that Kalman needs the
6   maximum-security setting of Whiting Forensic Institute.
7  7. Dr. Sabita Rathi, the acquittee's treating psychiatrist at
8     the time of the hearing on January 10, 2003, testified that
9     she concurred with the diagnosis with the addition of
10    nicotine dependants and if she would have to make the
11    decision the day she testified (2/10/03), she would agree
12    that the acquittee does not require a maximum-security
13    setting at Whiting Forensic Institute. See Exhibit B.
14 8. A report of Dr. Peter Zeman, who conducted an independent
15    evaluation of the acquittee, quoted from by the Chairman of
16    the Board also concluded the acquittee does not require the
17    maximum-security setting of the Whiting Forensic Institute.
18
19  **LEGAL GROUNDS RELIED UPON**
20      The Connecticut and United States Constitution mandate that
21  a person shall not be deprived of life, liberty without due
22  process of law. U. S. Constitution Amendment XIV, Sec. 1; Conn.
23  Constitution Art. 1 Section 8. Also see Addincton v. Texas,
24  441 U.S. 418, 425, 99 S. Ct. 1804, 1810. 60 L. Ed 2d 323, 332
25  (1979); O'Coner v. Donaldson , 422 U.S. 563, 574, 95 S. Ct

2486, 45 L.Ed 2d 396 (1975); <u>State v. Metz</u>, 230 Conn. 400  417-18, 645 A.2d 965 (1994); <u>Foucha v. Lousiana</u>, 504 U.S.  71,  80, 112 S. Ct 1780, 118 L. Ed. 2d 437 (1992).

The acquittee also relies on Conn. Gen. Stat. Sec. 17a –580, 17a-583, 17a-584,17a –599 and Conn. Regulation Sec. 17a-581-44; <u>Franclin v. Berger</u>, 211 Conn. 591, 604, 560 A. 2d 444 (1989);

Connecticut Supreme Court held **"that the loss of liberty  is all the more profound when the institution to which the patient has been committed is a maximum security facility such as Whiting."** <u>Connelly  v. Comm'r of Corection</u>, 258 Conn. 394, 405-406, 7800 A.2d 903(2001).

Moreover, the trial court in  the  present  case  expressly concluded that there is insufficient  evidence  that  acquittee was "so violent as to  require commitment under  conditions  of maximum security,"

**WHEREFORE**, pursuant to Psychiatric Security  Review  Board regulation Sections 17a – 581-3, 17a-581-43, and 17a-581-44 the acquittee  respectfully  requests that  the  Board  reopen  the hearing of  January  10,  2003,  and  schedule  an  evidentiary hearing on this matter wherein testimony and/or other  relevant evidence can be presented. Accordingly, acquittee  respectfully requests the Board to schedule an evidentiary  hearing  on  the Acquittee's First Application For Conditional Release From  The Confinement At Whiting Forensic Institute.

4

1

2

Respectfully submitted on the
20 th, day of September, 2003,
ACQUITTEE.

3

*Robt Kalman*

4

Robert Kalman
Whiting Forensic Institute

5

Connecticut Valley Hospital
P.O. Box 70 O'Brien Drive

6

Middletown, CT 06457

7

8

9

**ORDER**

10

11

The forgoing Acquittee's Application To Reopen A Hearing For

12

Reconsideration by the Psychiatric Security Review Board of its

13

Decision to Confine Robert Kalman Under Conditions of  Maximum-

14

Security and  Acquittee's First  Application  for  Conditional

15

Release  from the Confinement  at  Whiting  Forensic  Institute

16

having been heard, it is hereby ORDERED:

17

**GRANTED / DENIED,**

18

19

BY THE BOARD:

20

ROBERT B. BERGER, ESQUIRE, CHAIRMAN
PSYCHIATRIC SECURITY REVIEW BOARD

21

22

23

Dated at Hartford on this 6th, day of *October*, 2003.

24

25

*Matter of conditional release to
be addressed at 11/14/03 hearing*

5

Robert Kalman
Whiting Forensic Institute
Connecticut Valley Hospital
P.O. Box 70 O'Brien Drive
Middletown, CT 06457

December 11, 2003
Heidi M. Clarke, M.S.W.
Program Coordinator
Psychiatric Security Review Board
505 Hudson Street, 1 st Floor
Hartford, CT 06106

Dear Mrs. Clarke:

Please accept this letter as a request pursuant to the Freedom Of Information Act, of the State of Connecticut. I, the undersigned acquittee, committed to the jurisdiction of the Psychiatric Security Review Board, hereby respectfully request copies of the following documents:

1. Report submitted by WFD – Unit 4, to the P.S.R.B. regarding to the application for Conditional Release in accordance with Section 17a-588(b), dated 9/20/03.

2. Transcript of the Hearing regarding the matter of Application for Conditional Release.

I trust that you will consider this request. If you have any questions, please feel free to telephone me.

Thank you for your attention and time to this matter.

Respectfully,

Robert Kalman

# STATE OF CONNECTICUT

## PSYCHIATRIC SECURITY REVIEW BOARD

December 18, 2003

Robert Kalman
Whiting Forensic Division
P.O. Box 70
Middletown, CT 06457

Dear Mr. Kalman:

Per your request, enclosed is a copy of the report submitted by the Whiting
Forensic Division regarding your Application for Conditional Release, dated
October 23, 2003, which was sent to your attention via first class mail on October
27, 2003. Also enclosed is the transcript of your November 14, 2003 hearing.

Sincerely,

Heidi M. Clarke, Program Coordinator
Psychiatric Security Review Board

Enclosures

Telephone# (860) 566-1441 • Facsimile# (860) 566-1425

505 Hudson Street, First Floor • Hartford, Connecticut 06106-7107
website address: www.dmhas.state.ct.us/psrb

*An Equal Opportunity Employer*



# STATE OF CONNECTICUT

*DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES*

CONNECTICUT VALLEY HOSPITAL

WHITING FORENSIC DIVISION

October 23, 2003



RECEIVED

OCT 27 2003

PSYCHIATRIC SECURITY
REVIEW BOARD

Psychiatric Security Review Board
505 Hudson Street, 1st Floor
Hartford, Connecticut 06107-7107

|  |  |
|---|---|
| Re: | KALMAN, Robert |
| MPI#: | 132638 |
| PSRB #: | 0291 |

Dear Members of the Board,

In accordance with Connecticut General Statutes Section 17a-588(b) the following report on the mental condition of the above-named acquittee is submitted in response to Mr. Kalman's request for a conditional release. Mr. Robert Kalman was found not guilty by reason of mental disease or defect of the crimes of Illegal Possession of Explosives, Risk of Injury [two counts] and Failure to Appear, First Degree and was committed to the Department of Mental Health and Addiction Services at the Whiting Forensic Division on October 30, 2001. He was committed to the jurisdiction of the Psychiatric Security Review Board on September 25, 2002, for a period not to exceed 35 years. The last report to the Board was dated July 25, 2003, and the hearing before the Board was held on January 10, 2003.

**COURSE IN HOSPITAL:** Mr. Kalman was transferred to Unit 4 on October 15, 2002. As mentioned in the prior report to the Board, he has not been a behavioral or a management problem on the unit. He maintains a therapeutic alliance with the treatment team, however he does continue to explore legal avenues in order to be released to the community. No significant changes in Mr. Kalman's behavior or activity level have been noted since the last report to the Board. He continues to attend several therapeutic and rehabilitation activities at Whiting including Anger Management and Substance Abuse Groups. Mr. Kalman is also continuing to receive Ambien for difficulty falling asleep. Mr. Kalman has not received any other psychiatric medication during his stay on Unit 4. Mr. Kalman recently sat for the GED and is awaiting results of the examination. If he passes he is planning to start a correspondence course to become a paralegal.

**CURRENT MENTAL STATUS:** Mr. Kalman is a white male who is dressed casually with a neat appearance. He made good eye contact. His speech was rapid but normal in volume, and prosody. Mr. Kalman sat appropriately in his chair during the interview; no abnormal

P. O. Box 70 O'Brien Drive, Middletown, CT 06457
An Equal Opportunity Employer

movements were noted. He described his mood as "energized, relaxed." His affect was full and appropriate to content; no lability was noted. His thought processes were mostly logical and goal-directed. He was over inclusive when discussing legal issues. He denied suicidal or homicidal ideation. There was no evidence of auditory or visual hallucinations or other psychotic symptoms. His judgement and insight into his illness was fair. While discussing his substance abuse problem he stated that he realizes the importance of staying away from other people who use substances.

**CURRENT DIAGNOSIS:**

| | | |
|---|---|---|
| **AXIS I:** | 303.90 | Alcohol Dependence, in remission in a controlled environment |
| | 304.20 | Cocaine Dependence, in remission in a controlled environment |
| **AXIS II:** | 301.7 | Antisocial Personality Disorder |
| **AXIS III:** | 278.00 | Obesity |
| | 272.4 | Hyperlipidemia |
| | 530.81 | Gastroesophageal Reflux Disease |
| **AXIS IV:** | | Problems related to the social environment |
| | | Problems related to interaction with legal system/crime |
| **AXIS V:** | | Current GAF - 65 |

**MEDICATIONS:**

Ambien, 10 mg HS (treatment of insomnia)
Tricor, 160 mg QD (treatment of hyperlipidemia)
Aspirin, 81 mg QD (cardiac prophylaxis)
Protonix, 40 mg po BID (prophylaxis of peptic ulcer disease)

**CONCLUSIONS AND RECOMMENDATIONS:** Mr. Kalman carries the diagnoses of Antisocial Personality Disorder, Alcohol Dependence and Cocaine Dependence. He has been compliant with his treatment plan and is currently not a behavioral or management problem on the unit. He continues to receive medication for sleep difficulties. He is also being monitored for the reappearance of affective symptoms, which have not yet occurred.

Although he is stable at this time, his history suggests that should he start using substances he is at risk of engaging once again in illegal and dangerous behaviors. Mr. Kalman's pending felony charges have been recently resolved with the imposition of probation. The treatment team's assessment is that Mr. Kalman could now be considered for transfer to the less restrictive setting at Dutcher. The treatment team on Unit 4 is ready to pursue this issue via our customary hospital procedure.

Psychiatric Security Review Board                                          Page 3 of 3
Re: KALMAN, Robert                                                  October 23, 2003

At this time it is important for Mr. Kalman to demonstrate his ability to be able to continue to cooperate with a new treatment team in a less restrictive setting. He also needs to demonstrate the ability to responsibly handle increasing freedom and progress through the level system. He also needs to demonstrate the ability or show the team that he will be able to adhere to the conditions of his probation as set forth by the New Haven Superior Court on September 18, 2003.

Mr. Kalman would benefit from continued substance abuse treatment. We anticipate that the Dutcher treatment team will recommend his participation in a formal 45-day substance rehabilitation program in Merritt Hall after he achieves Level 4 status.

Our eventual recommendation for conditional release will be predicated upon, at a minimum, his successful completion of these steps and the identification of appropriate follow- up substance abuse treatment in the community. Anything less than this will, in our opinion, constitute a risk of repeated criminal behavior in the community. Therefore, it is the unanimous opinion of the treatment team that Mr. Kalman is not ready for conditional release into the community at this time. It is the opinion of the treatment team that Mr. Kalman should remain in the maximum-security setting for care custody and treatment at the Whiting Forensic Division of Connecticut Valley Hospital while we proceed with consideration of a recommendation for his transfer to the less restrictive setting at Dutcher.

Respectfully submitted,

*Sabita Rathi, M.D.*

Sabita Rathi, M. D.
Attending Psychiatrist

Reviewed by:

*Michael Norko*

Michael Norko, M.D
Medical Director
Whiting Forensic Division
Connecticut Valley Hospital

SR/scm-krz